FILED

IN THE UNITED STATES DISTRICT COURT OF
THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 JUL -9 PM 2: 33

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

WESTGATE RESORTS, LTD., a Florida limited
partnership, by and through its general partner
WESTGATE RESORTS, INC., a Florida
corporation, WESTGATE VACATION VILLAS,
LLC, a Florida limited liability company,
WESTGATE LAKES, LLC, a Florida limited
liability company, WESTGATE GV AT THE
WOODS, LLC, a Florida limited liability company,
WESTGATE TOWERS, LLC, a Florida limited
liability company, WESTGATE FLAMINGO BAY,
L.L.C., a Florida limited liability company,
WESTGATE MYRTLE BEACH, LLC, a Florida
limited liability company, WESTGATE PALACE,
LLC, a Florida limited liability company,
WESTGATE VACATION VILLAS OWNERS
ASSOCIATION, INC., a Florida corporation,
WESTGATE LAKES OWNERS ASSOCIATION,
INC., a Florida corporation, WESTGATE TOWERS
OWNERS ASSOCIATION, INC., a Florida
corporation, WESTGATE TOWN CENTER
OWNERS ASSOCIATION, INC., a Florida
corporation, WESTGATE TOWERS NORTH
OWNERS ASSOCIATION, INC., a Florida
corporation, WESTGATE RIVER RANCH
OWNERS ASSOCIATION, INC., a Florida
corporation, WESTGATE PALACE OWNERS
ASSOCIATION, INC., a Florida corporation,
WESTGATE FLAMINGO BAY, LAS VEGAS
OWNERS ASSOCIATION, INC., a Nevada
corporation, WESTGATE HISTORIC
WILLIAMSBURG, OWNERS ASSOCIATION,
INC., a Virginia corporation, WESTGATE PARK
CITY RESORT & SPA, OWNERS ASSOCIATION,
INC., a Utah corporation, WESTGATE MYRTLE
BEACH OCEAN FRONT OWNERS
ASSOCIATION, INC., a South Carolina corporation,
CEDAR RIDGE AT THE WOODS
CONDOMINIUM OWNERS ASSOCIATION, INC.,
a Missouri corporation, WESTGATE BRANSON
WOODS OWNERS ASSOCIATION, INC., a
Missouri corporation, GRAND VISTA AT

CASE NO.: 6:18-cv-1088-ORL-31-GJK

EMERALD POINT CONDOMINIUM OWNER'S
ASSOCIATION, INC., a Missouri corporation,
PAINTED MOUNTAIN GOLF VILLAS
CONDOMINIUM ASSOCIATION, INC., an
Arizona corporation, WESTGATE GV AT
EMERALD POINTE, LLC, a Florida limited liability
company, WESTGATE GV AT PAINTED
MOUNTAIN, LLC, a Florida limited liability
company, and WESTGATE LAS VEGAS RESORT,
LLC, a Delaware limited liability company,

        Plaintiffs,

vs.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, SCHROETER
GOLDMARK & BENDER, P.S., JAMES D.
HAILEY, THOMAS JAMES BREEN, KEN B.
PRIVETT PLC, KEN B. PRIVETT, BRANDON
REED, TREVOR HEIN and THOMAS
PARENTEAU,

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, WESTGATE RESORTS, LTD., a Florida limited partnership, by and through

its general partner WESTGATE RESORTS, INC., a Florida corporation, WESTGATE

VACATION VILLAS, LLC, a Florida limited liability company, WESTGATE LAKES, LLC, a

Florida limited liability company, WESTGATE GV AT THE WOODS, LLC, a Florida limited

liability company, WESTGATE TOWERS, LLC, a Florida limited liability company,

WESTGATE FLAMINGO BAY, L.L.C., a Florida limited liability company, WESTGATE

MYRTLE BEACH, LLC, a Florida limited liability company, WESTGATE PALACE, LLC, a

Florida limited liability company, WESTGATE VACATION VILLAS OWNERS

ASSOCIATION, INC., a Florida corporation, WESTGATE LAKES OWNERS

ASSOCIATION, INC., a Florida corporation, WESTGATE TOWERS OWNERS

2

ASSOCIATION, INC., a Florida corporation, WESTGATE TOWN CENTER OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE TOWERS NORTH OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE RIVER RANCH OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE PALACE OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE FLAMINGO BAY, LAS VEGAS OWNERS ASSOCIATION, INC., a Nevada corporation, WESTGATE HISTORIC WILLIAMSBURG, OWNERS ASSOCIATION, INC., a Virginia corporation, WESTGATE PARK CITY RESORT & SPA, OWNERS ASSOCIATION, INC., a Utah corporation, WESTGATE MYRTLE BEACH OCEAN FRONT OWNERS ASSOCIATION, INC., a South Carolina corporation, CEDAR RIDGE AT THE WOODS CONDOMINIUM OWNERS ASSOCIATION, INC., a Missouri corporation, WESTGATE BRANSON WOODS OWNERS ASSOCIATION, INC., a  Missouri corporation, GRAND VISTA AT EMERALD POINT CONDOMINIUM OWNER'S ASSOCIATION, INC., a Missouri corporation, PAINTED MOUNTAIN GOLF VILLAS CONDOMINIUM ASSOCIATION, INC., an Arizona corporation, WESTGATE GV AT EMERALD POINTE, LLC, a Florida limited liability company, WESTGATE GV AT PAINTED MOUNTAIN, LLC, a Florida limited liability company, and WESTGATE LAS VEGAS RESORT, LLC, a Delaware limited liability company (collectively, "Westgate" or "Plaintiffs"), file this Complaint against Defendants, REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington corporation, SCHROETER GOLDMARK & BENDER, P.S., a Washington professional services corporation, JAMES D. HAILEY, an individual, THOMAS JAMES BREEN, an individual, KEN B. PRIVETT PLC, a Oklahoma professional limited liability company, KEN B. PRIVETT, an

3

individual, BRANDON REED, an individual, TREVOR HEIN, an individual, and THOMAS PARENTEAU, an individual, and state:

## INTRODUCTION

1.     Timeshares are a popular option for vacationers throughout the world. In 2016, Florida led the United States in timeshare resorts, comprising 24 percent of the national total of 1,547 resorts.[1] It should come as no surprise, then, that Florida timeshare companies are often the main targets of schemes by so-called "consumer protection" firms whose business models profit from taking exorbitant up-front fees for disrupting the valid legal contracts between resorts and their owners. One such target is Westgate.

2.     Westgate is in the business of developing, financing, managing, and selling timeshare resort properties throughout the United States, including in Florida. Westgate is the world's largest privately-held timeshare company and one of the largest resort developers in the United States. Westgate has twenty-seven timeshare resorts located in a variety of high-destination tourism markets and is supported by some 6,000 employees. Westgate also offers financing to purchasers of Westgate timeshare interests and is the holder of promissory notes and mortgages extended to owners.

3.     Defendants Brandon Reed ("Reed"), Trevor Hein ("Hein"), and Thomas Parenteau ("Parenteau") control and dominate Defendant Reed Hein & Associates LLC d/b/a Timeshare Exit Team ("TET") and serve as driving, integral figures in TET's scheme described herein. Through TET's promises on its websites and myriad paid celebrity endorsements from the likes of Glenn Beck, Steve Harvey, and Dave Ramsey, Reed, Hein, and Parenteau make false

---

[1]   VacationBetter.org, *Timeshare Industry Shows Another Year of Substantial Growth*, http://vacationbetter.org/timeshare-industry-shows-another-year-of-substantial-growth/ (Accessed April 5, 2018).

4

and misleading promises purporting to operate a "consumer protection group" offering a "100% guarantee" to relieve timeshare owners of their obligations, including owners of Westgate timeshare interests. If TET is unsuccessful in cancelling an owners' timeshare interest, TET promises to return their money.

4.      However, TET – which is not a law firm – is not providing redress to owners in situations in which a timeshare company, resort, or developer such as Westgate has done something illegal. Rather, TET simply redirects to TET the money the owners would otherwise pay for their annual maintenance, taxes, or mortgage payments to their timeshare company, resort, or developer.

5.      In an interview with the television program New Day Northwest on King 5, a broadcast media company and NBC affiliate based in Seattle, Washington, TET representatives stated TET's business plan in a nutshell:

> As far as we're concerned, the majority of timeshare contracts out there are just unfair contracts. So that's what we do, we're a team of consumer advocates that also have attorneys when we need them. And we break those—we get them out of those contracts.[2]

6.      To accomplish TET's goal to "break" those contracts, TET's representatives, without any cognizable factual or legal basis for doing so, instruct owners to *stop* making their required payments to their timeshare companies. TET's representatives know that by giving owners this advice, owners will breach their valid and enforceable agreements with their timeshare company, resort, or developer. Identifiable owners of Westgate timeshare interests have followed this very advice from TET's representatives and Westgate has been damaged as a result.

---

[2]   King5.com, *Warning about scammers targeting time share owners*, http://www.king5.com/entertainment/television/programs/new-day-northwest/warning-about-scammers-targeting-time-share-owners/140109716 (Accessed Aug. 23, 2017).

7.     The instructions from TET's representatives are then furthered by the attorneys retained by TET: Defendants Schroeter Goldmark & Bender, P.S. ("SGB Law") and Ken B. Privett PLC ("Privett Law").  In fact, the owners never meet the attorneys at these firms working for TET, including Defendants James D. Hailey ("Hailey") and Thomas James Breen ("Breen") of SGB Law or Defendant Ken B. Privett ("Privett").  TET deliberately conceals the identity of these attorneys from its customers to ensure they can only obtain information about the status of their purported timeshare "exit" from TET.  Moreover, TET deliberately misleads customers into thinking that TET is a law firm by selective use of the moniker "Hein, Reed, & Associates," and falsely conveys to customers that it employs attorneys by referring to outside attorneys it claims to contract with as "our attorneys."

8.     These TET-retained attorneys send boilerplate demand letters to the owners' timeshare companies instructing them to cease communicating with TET's purported "clients" and either state that TET's "clients" wish to terminate their timeshare agreements without reference to any legal basis whatsoever, or wish to terminate their obligations on false legal and factual bases.  These demand letters, which are generic and not personalized to the situation of any owner, are sent to Westgate in connection with identifiable owners of Westgate timeshare interests.   Likewise, TET instructs its customers not to communicate with their timeshare companies, again to deliberately prevent them from obtaining information about the status of their timeshare and their purported "exit" from any source other than TET.

9.     Thus, owners are hamstrung both by TET's directions not to make their payments or to communicate with Westgate, and by SGB Law and Privett's furtherance of TET's instructions by sending demand letters signed by Hailey and Breen or Privett with baseless claims instructing Westgate not to contact its own customers.  TET's "100% guarantee" to

6

Case 6:18-cv-01088-GAP-DCI   Document 1   Filed 07/09/18   Page 7 of 52 PageID 7

*Westgate Resorts, Ltd., et. al. vs. Reed Hein & Associates LLC, et al.*
Complaint for Damages and Injunctive Relief

refund the owners' paid fee if TET fails to "exit" the owners from their timeshares is rendered worthless because Westgate owners have been lured into breaching their valid contracts with Westgate, subjecting them to a forced "exit" of their timeshares through foreclosure and/or liability for breach of contracts exceeding the value of their fees paid to TET. In the end, only TET profits, after providing no actual services, and Westgate is damaged.

## PARTIES

### A.    The Developer Plaintiffs

10.    WESTGATE RESORTS, LTD., is a Florida limited partnership with its principal place of business located in Orlando, Florida. Its general partner, Westgate Resorts, Inc., is a Florida corporation with its principal place of business located in Orlando, Florida. Its limited partners are Central Florida Investment, Inc., a Florida corporation with its principal place of business located in Orlando, Florida, and the David A. Siegel Irrevocable Trust dated April 19, 2010, a Florida irrevocable trust. The trustees are Michael Marder and David A. Siegel, both are individuals domiciled in Orlando, Florida, and are citizens of Florida. The beneficiaries of the Siegel Irrevocable Trust are all citizens of the state of Florida.[3]

11.    WESTGATE VACATION VILLAS, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

12.    WESTGATE LAKES, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

---

[3] The identities of the beneficiaries of the David A. Siegel Irrevocable Trust are confidential. Accordingly, in this Complaint, Plaintiffs have provided the beneficiaries' citizenship information that is relevant to the jurisdictional analysis without disclosing the specific names of the individual beneficiaries.

ACTIVE: 35468682.1-00108.3120

13.    WESTGATE GV AT THE WOODS, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

14.    WESTGATE TOWERS, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

15.    WESTGATE FLAMINGO BAY, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

16.    WESTGATE MYRTLE BEACH, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

17.    WESTGATE PALACE, L.L.C., is a Florida limited liability company with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

18.    WESTGATE GV AT EMERALD POINTE, LLC, is a Florida limited liability company, with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

19.    WESTGATE GV AT PAINTED MOUNTAIN, LLC, is a Florida limited liability company, with its principal place of business located in Orlando, Florida, and its sole member is Westgate Resorts, Ltd.

20.    WESTGATE LAS VEGAS RESORT, LLC, is a Delaware limited liability company, with its principal place of business located in Orlando, Florida. Its sole member is

8

Westgate LVH, LLC, a Florida limited liability company, and Westgate LVH, LLC's sole member is Westgate Resorts, Ltd.

**B.     The Association Plaintiffs**

21.     WESTGATE VACATION VILLAS OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

22.     WESTGATE LAKES OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

23.     WESTGATE TOWERS OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

24.     WESTGATE TOWN CENTER OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

25.     WESTGATE TOWERS NORTH OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

26.     WESTGATE RIVER RANCH OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

27.     WESTGATE PALACE OWNERS ASSOCIATION, INC., is a Florida corporation with its principal place of business located in Orlando, Florida.

28.     WESTGATE FLAMINGO BAY, LAS VEGAS OWNERS ASSOCIATION, INC., is a Nevada corporation with its principal place of business located in Orlando, Florida.

29.     WESTGATE HISTORIC WILLIAMSBURG, OWNERS ASSOCIATION, INC., is a Virginia corporation with its principal place of business located in Orlando, Florida.

30.     WESTGATE PARK CITY RESORT & SPA OWNERS ASSOCIATION, INC., is a Utah corporation with its principal place of business located in Orlando, Florida.

9

31.     WESTGATE MYRTLE BEACH OCEAN FRONT OWNERS ASSOCIATION, INC., is a South Carolina corporation with its principal place of business located in Orlando, Florida.

32.     CEDAR RIDGE AT THE WOODS CONDOMINIUM OWNERS ASSOCIATION, INC., is a Missouri corporation with its principal place of business located in Orlando, Florida.

33.     WESTGATE BRANSON WOODS OWNERS ASSOCIATION, INC., is a Missouri corporation with its principal place of business located in Orlando, Florida.

34.     GRAND VISTA AT EMERALD POINT CONDOMINIUM OWNER'S ASSOCIATION, INC., is a Missouri corporation with its principal place of business located in Orlando, Florida.

35.     PAINTED MOUNTAIN GOLF VILLAS CONDOMINIUM ASSOCIATION, INC., is an Arizona corporation with its principal offices located in Orlando, Florida.

C.     **The Defendants**

36.     TET is a Washington limited liability company with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

        a.     TET's Managing Members are Brandon Reed and Trevor Hein.

        b.     Makaymax, Inc., is a 60 percent owner of TET. Makaymax, Inc., is a Washington corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

        c.     Hein & Sons Industries, Inc., is a 40 percent owner of TET. Hein & Sons Industries, Inc., is a Delaware corporation with its principal place of

10

business at 3400 188th Street SW, Suite 300, Lynnwood, Washington
98037.

d.     "Timeshare Exit Team" is a registered trade name in Washington for Reed
Hein & Associates, LLC, defined and referred to herein as "TET."

37.     Defendant Schroeter Goldmark & Bender, P.S. ("SGB Law") is a Washington
professional services corporation with its principal place of business at 810 Third Avenue, Suite
500, Seattle, Washington 98104.

38.     Defendant James D. Hailey ("Hailey") is an individual who is licensed to practice
law in Washington and, upon information and belief, is a citizen of Washington.

39.     Defendant Thomas James Breen ("Breen") is an individual who is licensed to
practice law in Washington and, upon information and belief, is a citizen of Washington.

40.     Defendant Ken B. Privett PLC ("Privett Law") is an Oklahoma professional
limited liability company with its principal place of business at 524 5th Street, Pawnee,
Oklahoma 74058.

41.     Defendant Ken B. Privett ("Privett") is an individual who is licensed to practice
law in Oklahoma and, upon information and belief, is a citizen of Oklahoma.

42.     Brandon Reed ("Reed") is an individual domiciled in Kirkland, King County,
Washington, and is a citizen of Washington.

43.     Trevor Hein (Hein") is an individual domiciled in Surrey, British Columbia,
Canada, and is a citizen of Canada.

44.     Defendant Thomas Parenteau ("Parenteau")is an individual domiciled in Seattle,
King County, Washington, and is a citizen of Washington.

11

*Westgate Resorts, Ltd., et. al. vs. Reed Hein & Associates LLC, et al.*
Complaint for Damages and Injunctive Relief

## JURISDICTION

45.     This Court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiffs and all Defendants in this matter and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. §1331, as a federal question under the Lanham Act, 15 U.S.C. § 1125(a) is presented.

46.     This Court also has supplemental jurisdiction over Westgate's state law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

47.     This Court may exercise personal jurisdiction over all Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Florida, and this Court's exercise of personal jurisdiction over Defendants would not violate traditional notions of fair play and substantial justice.

### *TET*

48.     TET (i) solicits owners of timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, through the use of false, misleading, and deceptive advertising, (ii) intentionally interferes with contracts between Westgate and owners of Westgate timeshare interests, (iii) intentionally interferes with advantageous business and contractual relationships between Westgate and owners of Westgate timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, and (iv) is registered as a foreign limited liability company with the Florida Department of State in order to conduct business in the state of Florida.

12

ACTIVE: 35468682.1-00108.3120

49.    TET's Internet-based operations subject it to personal jurisdiction in the state of Florida.  TET solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising it contains on its websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.    These websites do not constitute passive advertising.  TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.

50.    TET commits tortious and/or wrongful acts in the state of Florida, specifically, tortious interference with contractual and business relationships between Westgate and owners of Westgate timeshare interests and unfair and deceptive acts and practices as further described herein.  TET instructs owners of Westgate timeshare interests to stop making payments of validly assessed maintenance and taxes, and of legitimately owed note and mortgage payments, to Westgate in Florida, which damages Westgate.

51.    TET makes agreements with owners of Westgate timeshare interests, some of whom own timeshare interests in Florida.  TET is to perform these agreements, in whole or in part, in Florida, supposedly negotiating with Westgate to release current and future obligations owed to the Plaintiffs.  To make the scheme seem legitimate, TET instructs the lawyers it claims to retain, Hailey, Breen, and Privett, to mail letters addressed to Westgate in Florida.

### *Hailey, Breen and SGB Law*

52.    Hailey, Breen, and SGB Law commits tortious acts in the state of Florida by conspiring with TET to tortiously interfere with contractual and business relationships between Westgate and owners of Westgate timeshare interests.

13

53.     TET retains SGB Law in order to effectuate the promised "exit" through Hailey and Breen, often with respect to Westgate Owners (as defined below) who reside in Florida and/or own a timeshare interest located in Florida. After TET representatives instruct owners of Westgate timeshare interests to stop making any payments to Westgate, TET instructs SGB Law to write Westgate presenting concocted reasons to, inter alia, stop communication between Westgate and its owners.

54.     Hailey and Breen prepare, sign, and send SGB Law's communications directed to Westgate in Florida to further the interference between the contractual and business relationships between Westgate and owners of Westgate timeshare interests.

## *Privett and Privett Law*

55.     Privett and Privett Law commit tortious acts in the state of Florida by conspiring with TET to tortiously interfere with contractual and business relationships between Westgate and owners of Westgate timeshare interests.

56.     TET retains Privett Law in order to effectuate the promised "exit" through Privett, often with respect to Westgate Owners (as defined below) who reside in Florida and/or own a timeshare interest located in Florida. After TET representatives instruct owners of Westgate timeshare interests to stop making any payments to Westgate, TET instructs Privett Law to write Westgate presenting concocted reasons to, inter alia, stop communication between Westgate and its owners.

57.     Privett prepares, signs, and sends Privett Law's communications directed to Westgate in Florida to further the interference between the contractual and business relationships between Westgate and owners of Westgate timeshare interests.

14

### *Reed*

58.     Personal jurisdiction over Reed is proper because Reed, along with Hein and Parenteau, directs and controls TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

59.     Reed uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant commercial and reputational harm to Westgate. Indeed, Reed controls and dominates TET to such an extent that it has no independent existence apart from his own (and Hein and Parenteau). He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee,[4] while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses.[5]  Reed uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Westgate, such that the corporate form of TET must be disregarded and individual liability imposed on Reed in order to prevent further losses to Westgate.

60.     This action arises out of and is related to Reed's purposeful contacts with the State of Florida resulting from TET's activities that he directed and controlled and as an alter ego of TET, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Westgate, a Florida

---

[4] In fact, after one of the TET-retained attorneys inadvertently sent out letters in 2016 to thousands of TET customers falsely stating that their timeshare exits had been accomplished, Reed, Hein, and Parenteau elected not to tell customers the truth. Instead, and despite objections from TET's account representatives, Reed, Hein, and Parenteau specifically instructed the account coordinators to conceal that information.
[5] In fact, at least one former employee of TET had expressed concern before being fired that TET was a Ponzi scheme because it lacks sufficient funds to cover guaranteed refunds to customers whose timeshare exits could not be effectuated due to substantial disbursements to Reed, Hein, and Parenteau. Additionally, Reed and Hein used TET funds to set up other businesses, and funneled TET funds to themselves through other entities solely owned and/or controlled by them.

15

company, and owners of timeshare interests in Florida; (iii) the intentional interference with advantageous business relationships between Westgate and owners of timeshare interests in Florida, (iv) and making false and misleading statements regarding Westgate through TET's website, directed at Florida residents. Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Westgate (including Westgate Owners who reside in Florida). Indeed, through false and deceptive advertisements, TET lures Westgate Owners to pay large upfront fees to retain TET and induce the Westgate Owners to breach existing contracts and terminate existing advantageous business relationships with Westgate. Such false and deceptive advertisements also underlie Westgate's claims against Reed for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

61.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Reed together with Hein and Parenteau, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com. These websites do not constitute passive advertising. TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer. Reed designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

### *Hein*

62.     Personal jurisdiction over Hein is proper because Hein, along with Reed and Parenteau, directs and controls TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

63.     Hein uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant commercial and reputational harm to Westgate. Indeed, Hein controls and dominates TET to such an extent that it has no independent existence apart from his own (and Reed and Parenteau). He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee [*see supra*, n. 4], while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses [*see supra*, n. 5]. Hein uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Westgate, such that the corporate form of TET must be disregarded and individual liability imposed on Hein in order to prevent further losses to Westgate.

64.     This action arises out of and is related to Hein's purposeful contacts with the State of Florida resulting from TET's activities that he directed and controlled and as an alter ego of TET, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Westgate, a Florida company, and owners of timeshare interests in Florida; (iii) the intentional interference with advantageous business relationships between Westgate and owners of timeshare interests in Florida, (iv) and making false and misleading statements regarding Westgate through TET's

17

website, directed at Florida residents. Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Westgate (including Westgate Owners who reside in Florida). Indeed, through false and deceptive advertisements, TET lures Westgate Owners to pay large upfront fees to retain TET and induce the Westgate Owners to breach existing contracts and terminate existing advantageous business relationships with Westgate. Such false and deceptive advertisements also underlie Westgate's claims against Hein for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

65.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Hein together with Reed and Parenteau, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.     These websites do not constitute passive advertising. TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer. Hein designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

### *Parenteau*

66.     Personal jurisdiction over Parenteau is proper because Parenteau, along with Reed and Hein, directs and controls TET, which they formed and have used for the improper

18

purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

67.    Parenteau uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant commercial and reputational harm to Westgate.    Indeed, Parenteau controls and dominates TET to such an extent that it has no independent existence apart from his own (and Reed and Hein).   He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee [*see supra*, n. 4], while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses [*see supra*, n. 5]. Parenteau uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Westgate, such that the corporate form of TET must be disregarded and individual liability imposed on Parenteau in order to prevent further losses to Westgate.

68.    This action arises out of and is related to Parenteau's purposeful contacts with the State of Florida resulting from TET's activities that he directed and controlled and as an alter ego of TET, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Westgate, a Florida company, and owners of timeshare interests in Florida; (iii) the intentional interference with advantageous business relationships between Westgate and owners of timeshare interests in Florida, (iv) and making false and misleading statements regarding Westgate through TET's website, directed at Florida residents.    Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Westgate (including Westgate Owners who reside in Florida).   Indeed, through false

19

and deceptive advertisements, TET lures Westgate Owners to pay large upfront fees to retain TET and induce the Westgate Owners to breach existing contracts and terminate existing advantageous business relationships with Westgate. Such false and deceptive advertisements also underlie Westgate's claims against Parenteau for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

69.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Parenteau together with Reed and Hein, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com. These websites do not constitute passive advertising. TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer. Parenteau designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

## VENUE

70.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391, because as described above and as set forth below, a substantial part of the events giving rise to Plaintiffs' claims occurred within or caused damage suffered in this District, a substantial number of Plaintiffs' timeshare resort properties are located in this District, and Defendants' conduct giving rise to the claims set forth herein occurred in and/or caused damage to Plaintiffs in Orange County, Florida.

## GENERAL ALLEGATIONS

### A.   The Timeshare Interest

71.     The Developer Plaintiffs are developers of timeshare resort properties throughout the United States, thirteen (13) of which are located in Florida with twelve (12) in this District. The Developer Plaintiffs' timeshare resorts have been in operation for many years and they have several hundred thousand customers who have purchased and own timeshare interests at the Developer Plaintiffs' various resorts.

72.     The Association Plaintiffs are owners' associations for the Developer Plaintiffs' timeshare resort properties throughout the United States. At the time owners purchase timeshares from the Developer Plaintiffs, the owners execute Contracts for Purchase and Sale wherein the owners agree to pay maintenance fees to the Association Plaintiffs for the upkeep of the timeshare units and common areas of the timeshare properties. In addition, the owners agree to pay a pro-rated share of the property taxes to the Association Plaintiffs which monies are then submitted by the Association Plaintiffs to the local tax collectors.

73.     If a purchaser desires purchase money mortgage financing from the Developer Plaintiffs, he or she may complete and submit a mortgage application as part of the Purchase Agreement; and upon approval of financing, a purchaser will execute and deliver a Promissory Note and Mortgage in connection with the timeshare purchase.  Both the Promissory Note and Mortgage are referenced and incorporated in the Purchase Agreement with the owners. Developer Plaintiffs are the lender and holder of the Promissory Note and Mortgage.

74.     Plaintiffs have invested heavily in the development, evolution and perpetual improvement of their products and services. They continually add new and improved services to their owner menu and are constantly otherwise improving their owner experience.

21

75.     Plaintiffs actively and aggressively protect their proprietary business practices and processes and their "Westgate Resorts" brand. They devote substantial resources to advertising and other marketing promotions to increase the visibility and recognitions of their proprietary products and to maintain and enhance the value of their brand. Plaintiffs compete directly with other developers and marketers of vacation and travel products and services who target similar consumers. The good will associated with Plaintiffs' brands and their products and services are essential to Plaintiffs' ability to effectively compete in a highly competitive marketplace.

**B.    Reed, Hein and Parenteau's TET Scheme**

76.     Collectively, Defendants are engaged in a timeshare cancellation scheme which induces Westgate Owners to breach their Purchase Agreements with, and related mortgage and maintenance fee obligations to, Westgate by paying that money, and often much, much more, instead to TET as large, upfront fees before any services are performed or benefits rendered.

77.     In or around December 2012, Reed and Hein formed TET for the improper purpose of soliciting timeshare owners using false and misleading advertising with, *inter alia*, the purpose of tortiously interfering with Plaintiffs' existing contracts with owners of Westgate timeshare interests ("Westgate Owners").

78.     Reed and Hein are the founding members of TET. Reed currently serves as Chief Executive Officer of TET, and Parenteau serves as TET's Chief Operating Officer. Even though Reed and Hein are the purported owners of TET, Reed and Hein together with Parenteau are the masterminds behind TET's overall scheme and direct and control all of TET's activities which are the subject of this lawsuit such that TET is the alter ego of Reed, Hein, and Parenteau.

79.     Through their alter ego TET, Reed, Hein and Parenteau solicit timeshare owners, including identifiable Westgate Owners, to sign contracts with TET for so-called timeshare exit

22

services through in-person sales and webinars calling for large payments upfront, long before TET performs any services.

80.    In order to lure timeshare owners, including Westgate Owners, to hire TET, Reed, Hein and Parenteau make false and misleading guarantees using a variety of advertising and marketing methods. Reed, Hein and Parenteau's methods include paid endorsements by radio personalities and motivational speaker's websites, advertising through radio stations across the country, appearing in newspaper articles (such as in the Los Angeles Times and USA Today), engaging in television advertising, and advertising through several websites, including: www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com. The domain names www.reedhein.com    and    www.321exit.com    both    redirect    customers    to www.timeshareexitteam.com. Reed, Hein and Parenteau similarly utilize social media, such as Facebook, and other internet websites and forums to sell TET's services to timeshare owners, including Westgate Owners.

81.    Among the most notorious of TET's paid celebrity endorsements is Dave Ramsey, a radio personality who advises listeners on personal and household finances. Upon information and belief, identifiable Westgate Owners have been lured to TET because of Mr. Ramsey's radio show. In fact, on Mr. Ramsey's own website, he decries timeshares as outright "scams" and provides a link to TET's website.[6]

82.    Through the www.timeshareexitteam.com website, Reed, Hein and Parenteau advertise that TET will utilize its illusory "proprietary process" to "get rid of" owners' timeshare contracts "Safely. Legitimately. Forever." As shown by TET's "Frequently Asked Questions" section on its website, TET targets timeshare owners who are:

---

[6] DaveRamsey.com, The Truth about Timeshares, https://www.daveramsey.com/blog/the-truth-about-timeshares (Accessed April 5, 2018).

- Not using their timeshare as much as they intended to
- Frustrated by unexpected "special assessments" and skyrocketing maintenance fees
- Financially set back by their timeshare maintenance fees and special assessments
- Frustrated by their failure to sell the timeshare through a listing company
- Concerned about their children inheriting their timeshare and then consequently becoming financially responsible for it
- Bothered they can't vacation where they want, when they want
- Tired of going to the same place every year
- Aggravated with exchange companies
- Realizing that there are more ways to go on vacation for much less
- Widowed or divorced, or are no longer able to travel with their loved ones
- Inheritors of a timeshare they don't want or use
- Part of resort scams

83.    While the "FAQs" may enumerate legitimate individual concerns, there is nothing "legitimate" about this website or the sales pitch that accompanies it. Reed, Hein and Parenteau falsely portray these "FAQs" as legally sufficient legal bases to terminate a timeshare contract when, in fact, none of these are legitimate reasons for a timeshare owner to cease making his or her payments under their legally binding contracts with a timeshare company.

84.    As part of TET's advertised "unique strategy," Reed, Hein and Parenteau direct TET's representatives to instruct owners to stop making payments on their timeshare obligations, such as owners' purchase money Promissory Note and Mortgage payments owed, for instance, to Developer Plaintiffs, as well as maintenance and tax payments, due, for example, to Association Plaintiffs. Reed, Hein and Parenteau falsely assure the owners that, this way, timeshare companies will be more willing to allow the owners to "exit" their timeshare. Through TET, Reed, Hein and Parenteau further misrepresent to owners that their credit scores will not be

24

affected by halting their payments. Upon information and belief, identifiable Westgate Owners were given these very instructions and false assurances.

85.    TET's misleading advertising and marketing was designed by Reed, Hein and Parenteau to induce Westgate Owners to breach their Purchase Agreements with Westgate. But Reed, Hein and Parenteau fail to inform Westgate Owners what, exactly, TET's "exit process" consists of and never publicly disclose TET's strategy. Instead, they repeatedly refer to a vague "exit process" that Reed, Hein and Parenteau claim is "proprietary."

86.    In actuality, TET's process and strategy is nothing more than a scheme to enrich Reed, Hein and Parenteau at the expense of timeshare owners and timeshare companies by (a) falsely conveying to the public that TET can get customers out of their timeshares without a legitimate reason; (b) persuading timeshare owners to pay large up-front fees to TET instead of paying their contractually-required obligations to timeshare companies and associations; and (c) preventing communications between timeshare owners and timeshare companies through letters sent by TET-retained attorneys, whose identities TET conceals from its customers, allowing TET to manipulate the flow of information to its customers, hide the fact that nothing is being done to accomplish their timeshare "exits," and to confuse customers so they do not demand the "guaranteed" refunds of their fees – money already disbursed to benefit Reed, Hein, and Parenteau.

87.    Reed, Hein and Parenteau also fail to publicly disclose the fees TET charges timeshare owners, including Westgate Owners. When asked about fees charged, TET's normal response is to state that every case is unique and that a private consultation with TET is the only way to obtain a fee quote. Reed, Hein and Parenteau direct TET representatives to refuse to provide fee information unless a timeshare owner participates in a "free consultation" with TET.

25

88.     Timeshare owners, including Westgate Owners, are thus left with only a vague idea as to what TET will do for them (other than TET's general, false promise to exit their timeshare contract) or how TET will accomplish the purported exit. Thus, timeshare owners who contact TET, including Westgate owners, may not be predisposed to exit their timeshare when they contact TET and may only be seeking additional information that Reed, Hein and Parenteau refuse to publicly disclose, unless the Westgate owners submits to a misleading sales pitch deceptively disguised as a "free consultation."

89.     The fees charged by Reed, Hein and Parenteau for TET's purported services vary, but are typically thousands of dollars per timeshare owner. These fees are so high that Reed, Hein and Parenteau offer financing plans to timeshare owners (including Westgate Owners), ironically just like the timeshare developers TET assails for, among other things, their financing practices.

90.     TET's agreements with the owners who retain them are designed to protect TET from its own misrepresentations. Upon information and belief, identifiable Westgate Owners' retainer documents contain provisions that contradict the verbal instructions TET's representatives give to the owners and the "guarantees" emblazoned across TET's website. The following disclaimer is from a February 21, 2016, version of TET's "Things to Remember":

> RESORT FEES. You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete. If you have determined of your own accord not to pay the resort ever again, you can expect some consequences that may include negative credit reporting, collection activity and/or legal action. In the final resolution with the resort, we may be able to request removal of any negative credit reporting with the credit bureaus. If there is a collection agency involved, we can assist you by requesting that the agency stop contacting you. However, we cannot control all of the actions by the resort or the collection agency. We have found that some

> resorts are quite pleasant to work with on an exit, while others are
> not. We can deal with both types for you. Our goal is to achieve
> an ultimate positive result for you.

91.    TET's aspiration of an "ultimate positive result" is nowhere near equivalent to its

advertised and apparently demonstrably false "personal GUARANTEE . . . that our team of

consumer advocates will get you out of your timeshare, period."

92.    Unbeknownst to the timeshare owner and undisclosed during the sales pitch, the

"guarantee" is defined as *whatever offer* TET can manage to obtain from a timeshare resort,

even one requiring full payment of all existing and future debt (so that the owner is economically

worse off than before TET, as they have already paid TET a substantial fee). The following

excerpt is from a November 23, 2015, TET retainer agreement:

> FEES AND COSTS. Under this Agreement there are absolutely
> no extra service fees or closing costs to be owed or paid by the
> CLIENT to REED HEIN. However, some resorts may require a
> cancellation fee or similar fee to end or exit an ownership, and
> such fee(s) may be required in your case. These fees will be no
> greater than the amount of this current year's maintenance fee. If
> so, the CLIENT will be required to pay that fee to the Resort for a
> successful exit.    In addition, some resorts require all past
> maintenance fees to be paid upon the completion of an exit. If
> required, these past maintenance fees will be paid by the CLIENT.
> Whether accepted by OWNER or not, an exit agreement obtained
> by REED HEIN from the Resort shall meet REED HEIN's
> Guarantee even though the Resort may require by OWNER of an
> exit fee.

93.    But TET does not itself deal with the timeshare companies – the undisclosed,

unidentified TET-retained attorneys are the ones who supposedly do so.    Reed, Hein and

Parenteau have TET hire the attorneys to execute TET's advertised "proprietary process," but do

not so inform TET's customers.    These attorneys, including Hailey, Breen, and Privett, are

retained pursuant to an industrialized bulk representation contracts under which TET sends SGB

Law and Privett the law firm an agreed minimum number of files each month and pays a fixed

27

fee per file. TET then positions itself as the "interface" between the owners and the undisclosed unidentified attorneys. But the representation agreements prohibit TET from actually telling TET's clients that the undisclosed unidentified attorneys actually represent them.

94.    Another deception that Reed, Hein and Parenteau use to mislead owners is to compare the cost of paying the owner's timeshare company to the fee TET is charging. One example showed the cost of fifteen years of maintenance fees ($21,579.00) and mortgage payments ($14,861.00), totaling $36,440.00 (not discounted to present value) versus TET's fee of $6,395.00 to TET, but totally and deceptively concealed the upwards of *thirty weeks of already paid for resort accommodations to which the owner is entitled*. Printed over the final comparison figures, TET asks a simple question:

*Which of these would you rather pay?*

95.    After signing TET's retainer documents, owners are assigned a non-lawyer "Account Coordinator who becomes [their] personal contact during [the owner's] entire exit process. No general 800 phone numbers or endless automated phone systems while trying to reach Customer Service. [The] Account Coordinator will explain how the process works and will provide you with status updates throughout the exit process." In fact, however, the e-mail updates that identifiable Westgate Owners have received are scant, non-specific, and designed to string along Westgate Owners into believing that actual work is being done on their behalves, when it is not.

96.    Thereafter, TET supposedly begins its "negotiation process" with the owners' timeshare companies. On its website, TET states that the "specifics of the process will depend on your ownership situation and how the resort responds to our requests." But regardless, and undisclosed to the customer, no lawyer is actually involved and the customer is completely

28

dependent on TET's non-lawyer telephone operators. Nonetheless, TET promises an "exit" without disclosing how that is to be accomplished, and promises a full refund of its entire fee otherwise.

97.     However, by Reed, Hein and Parenteau's design, TET is not doing any work to negotiate anything at all and fails to notify owners of this until the owners are in arrears with the developer and the association. Instead, TET's "Potemkin Village" hires law firms – here SGB Law and Privett Law – whose letterhead is used to send a generic "demand" letter to the developer, but Hailey, Breen, and Privett perform no actual "negotiations." In exchange for Hailey, Breen, and Privett affixing their signatures on form demand letters, TET pays these law firms $1,200.00 each for a minimum of 800 files a month, which, at more than $1 million a year for little or no actual legal services is a lucrative operation for law firms such as SGB Law and Privett Law. [7]

98.     After a year or more of having done nothing nor even *trying* to do something, TET representatives tell Identifiable Westgate Owners that the attorney retained by TET "could not help [the Westgate Owners] anymore." Since the boilerplate demand letters TET sends for the law firms forbid them from communicating with Westgate Owners – state debt collection laws mandate that Westgate abide by that - the owners are not informed that TET, Hailey, Breen SGB Law, Privett Law, and Privett have accomplished absolutely *nothing* for them until the owners are served with Westgate's collection or foreclosure lawsuit.

99.     All that Reed, Hein, Parenteau and TET actually accomplish is to interfere with routine communications between Westgate and its Westgate Owners and cause those Westgate

---

[7] In fact, Privett has sued TET for breach of one of these exclusive and profitable master fee agreements. *See Ken B. Privett, PLC v. ReedHein & Associates, LLC d/b/a Timeshare Exit Team*, Case No. CJ-17-20 (District Court of Pawnee County, Oklahoma).

29

Owners to default on their payment obligations resulting in debt collection or foreclosure lawsuits with attendant credit reporting. Yet they nonetheless falsely claim or, worse yet, knowing allow owners to believe that TET has "exited" the Westgate Owners from their Purchase Agreements.

## C.    Hailey, Breen and SGB Law's Furtherance of Reed, Hein and Parenteau's TET Scheme

100.    SGB Law is hired by TET ostensibly to have Hailey and Breen "negotiate" timeshare owners' exits with timeshare companies, including Westgate. This occurs once TET's false and misleading advertising induces the timeshare owner to contract with TET, and after TET instructs its customers to breach their valid and enforceable agreements with their timeshare company.

101.    Hailey and Breen prepare, approve, sign, and send cookie-cutter demand letters to Westgate for supposed clients who have never met and are not even aware they are represented by SGB Law and have never heard of, or spoke to, Hailey or Breen. SGB Law's letters to Westgate say little more than TET's customers "are interested in terminating their time share[sic] memberships," and forbid any communication between Westgate and Westgate Owners "with the lone exception of forwarding routine billings to the client via mail." The letters say nothing about the Westgate Owner's individual circumstances but rather are "one size fits all" correspondence whose purpose is to silence Westgate. These letters and what follows foster TET's interference with the contractual and business relationships between the Westgate Owners and Westgate as, through the operation of state debt collection laws, Westgate cannot talk with its own customers about their relationship with Westgate. Because TET isolates the Westgate Owner from Westgate, Westgate has no choice other than to pursue debt collection and/or foreclosure, with the resulting expense to Westgate.

30

102.    Hailey, Breen, and SGB Law's actions in concert with, and in furtherance of, TET's scheme have caused significant damages to Westgate with substantial pecuniary gain for Hailey, Breen, and SGB Law.

### D.    Privett and Privett Law's Furtherance of Reed, Hein and Parenteau's TET Scheme

103.    TET has also employed Privett and Privett Law to pursue these illusory timeshare owners' exit "negotiations" with timeshare companies, including Westgate. Just as with SGB Law, TET contracts with Privett once its false and misleading advertising program has induced the timeshare owner to contract with TET, and after TET instructs its clients to breach their valid and enforceable agreements with their timeshare company.

104.    Privett prepares, approves, signs, and sends cookie-cutter demand letters to Westgate for supposed clients who have never met and are not even aware they are represented by Privett Law and have never heard of, or spoke to, Privett. Privett Law's letters to Westgate say little more than TET's customers "are interested in terminating their time share[sic] memberships," and forbid any communication between Westgate and Westgate Owners "with the lone exception of forwarding routine billings to the client via mail." The letters say nothing about the Westgate Owner's individual circumstances but rather are "one size fits all" correspondence whose purpose is to silence Westgate. These letters and what follows foster TET's interference with the contractual and business relationships between the Westgate Owners and Westgate as, through the operation of state debt collection laws, Westgate cannot talk with its own customers about their relationship with Westgate. Because TET isolates the Westgate Owner from Westgate, Westgate has no choice other than to pursue debt collection and/or foreclosure, with the resulting expense to Westgate.

31

105.    Privett and Privett Law's actions in concert with, and in furtherance of, TET's scheme have caused significant damages to Westgate with substantial pecuniary gain for Privett and Privett Law.

### D.    Defendants' Actions Have Damaged Plaintiffs

106.    To date, TET's false, deceptive, and misleading advertising, conceived, controlled and implemented by Reed, Hein and Parenteau, has caused identifiable Westgate Owners to retain TET and, at TET's instruction, (1) to stop making payments on their Promissory Notes and Mortgages they signed when they purchased their timeshare interests, and (2) to stop paying maintenance and other fees they contractually committed to pay. TET, at the direction of Reed, Hein and Parenteau, intentionally and unjustifiably interfere with Plaintiffs' contracts with the Westgate Owners by inducing Westgate Owners to stop paying Plaintiffs and instead pay TET's fee, by giving false assurances that there will be no harm to their credit scores and by guaranteeing that they will be "exited" from their timeshare "Safely. Legitimately. Forever." Plaintiffs are damaged because TET's entire business model is premised on drawing customers away from Plaintiffs, disparaging Plaintiffs' brand, and making false statements about Plaintiffs. But for TET's scheme, conceived, implemented and controlled by Reed, Hein and Parenteau, Westgate would not suffer such damages.

107.    Hailey, Breen, SGB Law, Privett, and Privett Law further TET's scheme by sending demand letters rife with false or non-existent legal grounds for termination and by forbidding Westgate to communicate with the Westgate Owners. Defendants engaged in this arrangement together for their collective pecuniary gain.

108.    All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

32

109.    Plaintiffs have retained the law firm of Greenspoon Marder LLP to represent them in this action and are obligated to pay Greenspoon Marder LLP's reasonable attorneys' fees and costs.

## COUNT I: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS
### (Against Defendants TET, Reed, Hein, and Parenteau)

110.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 99, and paragraphs 106 through 109 above as if more fully set forth herein.

111.    This is a cause of action for tortious interference with existing contracts and for injunctive relief and damages in excess of $75,000.00.

112.    Plaintiffs hold valid and legally enforceable contracts with Westgate Owners for their timeshare units.

113.    TET, Reed, Hein and Parenteau (the "TET Defendants") have knowledge of those relationships. The very fact that the Westgate Owners have contracts with Plaintiffs is the basis under which the TET Defendants sought to establish a relationship with the Westgate Owners.

114.    The TET Defendants sought to capitalize on Plaintiffs' contractual relationships with the Westgate Owners by soliciting the Westgate Owners through TET's false and misleading advertising, inducing them to pay large upfront fees to TET, and inducing them to stop making payments to Plaintiffs notwithstanding the Westgate Owners' legally enforceable contracts with Plaintiffs. The TET Defendants do this to divert money contractually owed to Westgate to TET instead.

115.    The TET Defendants' false and misleading advertising used to induce Westgate Owners to breach their contractual relationships with Westgate include deceptive website advertisements and celebrity endorsements. The TET Defendants further induce Westgate

33

Owners to stop making their payments to Westgate with the false promise of achieving a favorable timeshare exit.

116.    The TET Defendants' willful actions to induce parties with whom Plaintiffs have valid contractual agreements to breach their agreements constitute intentional interference with existing contracts.

117.    The TET Defendants have intentionally, and without justification or privilege, interfered with Plaintiffs' existing contracts by inducing Westgate Owners to immediately stop making any further payments under their contracts without any legal basis.

118.    The TET Defendants' actions were not made in good faith, but rather were made with purely selfish and mercenary reasons so as to collect and retain the large pre-paid retainer fee without actually providing any meaningful services to the Westgate Owners and were with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences resulting from the TET Defendants' actions and without reasonable grounds for TET Defendants to believe that its actions were justified and proper.

119.    As a direct and proximate result of the TET Defendants' intentional misconduct, Westgate Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

120.    The TET Defendants did not have any justification or privilege in procuring the breach of such contracts.

121.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

122.    An injunction is a viable form of relief in a suit for tortious interference.

a)    As parties to legitimate and enforceable agreements with Westgate Owners, Plaintiffs have a clear legal right or interest in such contracts with Westgate Owners.

34

b)       As set forth in part above, the TET Defendants have procured unwarranted and unjustified contract breaches, so Plaintiffs have a substantial likelihood of success on merits.

c)       The TET Defendants continue to solicit timeshare owners, such as Westgate Owners, through the described misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will continue to suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)       An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

123.     As a proximate result of TET's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, punitive damages, costs, and such other and further relief as the Court may deem proper.

## COUNT II VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*
### (Against Defendants TET, Reed, Hein, and Parenteau)

124.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 99, and paragraphs 106 through 109 above as if more fully set forth herein.

125.    This is a cause of action for actual damages and injunctive relief for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), against TET, Reed, Hein, and Parenteau (the "TET Defendants"), including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

126.    The TET Defendants is engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

127.    Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

128.    The TET Defendants have engaged in unconscionable, unfair, and deceptive acts or practices, including but not limited to:

    a)    soliciting Westgate Owners through false and misleading advertising and marketing materials which deceives Westgate Owners into believing that they may cancel their timeshare interest without any legal basis or reason whatsoever;

    b)    fraudulently inducing Westgate Owners into retaining TET based on TET's advertised "100% guarantees" of "exiting" timeshares when the TET Defendants cannot actually fulfill the guarantee without detriment to the Westgate Owners;

    c)    misrepresenting that they will "interface" between the Westgate Owners and law firms such as SGB Law and Privett Law without providing the Westgate Owners details about the attorneys or actually facilitating contact between them, and when the Westgate Owners often never

36

communicate with Hailer, Breen, Privett or any other lawyers at those law firms; and

d)   instructing Hailey, Breen, and Privett to transmit demand letters on the letterhead of SGB Law and Privett Law to Westgate attempting to terminate the Westgate Owners' contracts on non-existent legal bases or on bases of "claims of fraud and misrepresentation arising from [Westgate's] time-share presentation and sale," when none of the identifiable Westgate Owners retained TET for those reasons.

129.   As a direct and proximate result of the TET Defendants' deceptive and unfair trade practices, Plaintiffs have suffered actual damages.

130.   Plaintiffs have a clear legal right or interest in being free from the TET Defendants' deceptive or unfair advertising, as the false statements and representations set forth above have caused specific past and present grievances, and will result in future grievances if the TET Defendants are not enjoined.

131.   The TET Defendants continue to engage in such false and deceptive marketing campaigns and fraudulent representations for the purpose of soliciting the Westgate Owners and inducing them to pay large upfront retainer fees with the false representation that the Westgate Owners may unilaterally terminate their obligations with Plaintiffs without any valid legal basis, and therefore, there is a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis and any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices, is inadequate.

132.   Pursuant to Fla. Stat. § 501.211(1), declaratory and injunctive relief are viable forms of relief for violations of FDUTPA in this case because:

37

a)       The TET Defendants' actions, as outlined above, constitute deceptive, misleading, and unfair practices in violation of FDUTPA.

b)       The TET Defendants have procured unwarranted and unjustified contract breaches due to the TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, so Plaintiffs have a substantial likelihood of success on merits.

c)       The TET Defendants continue to solicit timeshare owners, such as Westgate Owners, through the TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of TET's deceptive, misleading, and unfair practices in violation of FDUTPA is inadequate.

d)       An injunction would serve the public interest because, *inter alia*, an injunction would protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

133.    As a direct and proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and request temporary and permanent injunctive relief, actual damages, punitive damages upon a showing of sufficient evidence of fraud, attorney's fees and costs incurred in this action and in any appeal pursuant to Fla. Stat., §501.2105, and such other and further relief as the Court may deem proper.

ACTIVE: 35468682.1-00108.3120

## COUNT III: CIVIL CONSPIRACY
### (Against Defendants TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen)

134.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 102, and paragraphs 106 through 109 above as if more fully set forth herein.

135.    This is a cause of action for civil conspiracy to commit tortious interference with existing contracts seeking injunctive relief and damages in excess of $75,000.00.

136.    TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen are parties to a civil conspiracy as they conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts with the Westgate Owners.

137.    TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

a.    TET, Reed, Hein, and Parenteau use misleading advertising to lure Westgate Owners to obtain TET's services;

b.    TET, Reed, Hein, and Parenteau encourage Westgate Owners to breach their contracts with Westgate even though they have no legal basis to do so;

c.    At TET, Reed, Hein, and Parenteau's direction and pursuant to TET's master fee agreements, Hailey, Breen, and SGB Law send demand letters prepared, approved, and signed by Hailey and Breen and placed on SGB Law's letterhead, stating non-legal bases upon which Westgate Owners can purportedly cancel their Purchase Agreements in furtherance of TET, Reed, Hein, and Parenteau's interference between the Westgate Owners

and Westgate, and TET, Reed, Hein, and Parenteau pay fees to SGB Law for this.

138.    Reed, Hein, and Parenteau direct and control TET and are alter egos of TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme. Each of them separately and individually performed one or more overt actions in furtherance of their conspiracy with TET, SGB Law, Hailey and Breen, and each of them has a personal stake in the conspiracy to personally enrich themselves that is separate and distinct from TET's interest in the conspiracy.

139.    As a direct and proximate result of TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen's civil conspiracy, the Westgate Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

140.    TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen did not have any justification or privilege in procuring the breach of such contracts.

141.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

142.    An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts.

        a.    TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen's actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts.

        b.    TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen have procured unwarranted and unjustified contract breaches due to their civil conspiracy

40

to commit tortious interference with existing contracts, so Plaintiffs have a substantial likelihood of success on merits.

c.  TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen continue to solicit timeshare owners, such as Westgate Owners, through their civil conspiracy to commit tortious interference with existing contracts, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET, SGB Law, Hailey, and Breen's perpetuation of their civil conspiracy is inadequate.

d.  An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

143.  As a proximate result of TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET, Reed, Hein, Parenteau, SGB Law, Hailey, and Breen's conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, THOMAS PARENTEAU, SCHROETER GOLDMARK & BENDER, P.S., JAMES D. HAILEY, and THOMAS JAMES BREEN, and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, punitive damages, costs, and such other and further relief as the Court may deem proper.

41

## COUNT IV: CIVIL CONSPIRACY
### (Against Defendants TET, Reed, Hein, Parenteau, Privett Law, and Privett)

144.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 99, and paragraphs 103 through 109 above as if more fully set forth herein.

145.    This is a cause of action for civil conspiracy to commit tortious interference with existing contracts seeking injunctive relief and damages in excess of $75,000.00.

146.    TET, Reed, Hein, Parenteau, Privett Law, and Privett are parties to a civil conspiracy as they conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts with the Westgate Owners.

147.    TET, Reed, Hein, Parenteau, Privett Law, and Privett each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

        a.    TET, Reed, Hein, and Parenteau use misleading advertising to lure Westgate Owners to obtain TET's services;

        b.    TET, Reed, Hein, and Parenteau encourage Westgate Owners to breach their contracts with Westgate even though they have no legal basis to do so;

        c.    At TET, Reed, Hein, and Parenteau's direction and pursuant to TET's master fee agreements, Privett Law and Privett send demand letters, prepared, approved, and signed by Privett and placed on Privett Law's letterhead, stating non-legal bases upon which Westgate Owners can purportedly cancel their Purchase Agreements in furtherance of TET, Reed, Hein, and Parenteau's interference between the Westgate Owners

42

and Westgate, and TET, Reed, Hein, and Parenteau pay fees to Privett
Law for this.

148.    Reed, Hein, and Parenteau direct and control TET and are alter egos of TET,
which they formed and have used for the improper purpose of operating a fraudulent timeshare
exit scheme.  Each of them separately and individually performed one or more overt actions in
furtherance of their conspiracy with TET, Privett Law, and Privett and each of them has a
personal stake in the conspiracy to personally enrich themselves that is separate and distinct from
TET's interest in the conspiracy.

149.    As a direct and proximate result of TET, Reed, Hein, Parenteau, Privett Law, and
Privett's civil conspiracy, the Westgate Owners have terminated, or have sought to terminate,
their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

150.    TET, Reed, Hein, Parenteau, Privett Law, and Privett did not have any
justification or privilege in procuring the breach of such contracts.

151.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

152.    An injunction is a viable form of relief for a cause of action for civil conspiracy to
commit tortious interference with existing contracts.

        a.    TET, Reed, Hein, Parenteau, Privett Law, and Privett's actions, as outlined
above, constitute a civil conspiracy to commit tortious interference with
existing contracts.

        b.    TET, Reed, Hein, Parenteau, Privett Law, and Privett have procured
unwarranted and unjustified contract breaches due to their civil conspiracy
to commit tortious interference with existing contracts, so Plaintiffs have a
substantial likelihood of success on merits.

43

     c.     TET, Reed, Hein, Parenteau, Privett Law, and Privett continue to solicit timeshare owners, such as Westgate Owners, through their civil conspiracy to commit tortious interference with existing contracts, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET, Privett Law, and Privett's perpetuation of their civil conspiracy is inadequate.

     d.     An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

153.     As a proximate result of TET, Reed, Hein, Parenteau, Privett Law, and Privett's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET, Reed, Hein, Parenteau, Privett Law, and Privett's conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, THOMAS PARENTEAU, KEN B. PRIVETT PLC, and KEN B. PRIVETT, and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, punitive damages, costs, and such other and further relief as the Court may deem proper.

## COUNT V: MISLEADING ADVERTISING, FLA. STAT. § 817.41
### (Against Defendant TET, Reed, Hein, and Parenteau)

154.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 99, and paragraphs 106 through 109 above as if more fully set forth herein.

44

155.   This is a cause of action for misleading advertising pursuant to Fla. Stat. § 817.41 seeking injunctive relief and damages in excess of $75,000.00.

156.   Defendants TET, Reed, Hein, and Parenteau (the "TET Defendants") purposefully inject themselves into the same marketplace in which Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners. The TET Defendants' false advertising is directed both to Plaintiffs' existing client base and to prospective owners.

157.   As outlined above, the TET Defendants manage and control the operations of TET, and therefore direct the marketing and advertising decisions of TET.   Accordingly, the TET Defendants are in direct competition with Plaintiffs for the payments Westgate Owners owe to Plaintiffs. The TET Defendants specifically seek out Westgate Owners to make payments to TET instead of to Plaintiffs.

158.   The TET Defendants have solicited Westgate Owners through false and misleading advertising and marketing materials characterizing the entire timeshare industry as a scam and deliberately maligning Plaintiffs' reputation to induce Westgate Owners to cancel their timeshare interest without any factual or legal basis and stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

159.   The TET Defendants misleadingly advertise on the Internet and radio, in their marketing materials, and through celebrity endorsements, that all timeshare are illegitimate and guarantee they will relieve timeshare owners of their timeshare obligations if TET is retained.

160.   The TET Defendants make false and misleading comparisons between the cost of owning a timeshare and the cost of using TET's services in their marketing materials sent to timeshare owners as one of the final steps to convince owners to retain them.

45

161.    The TET Defendants' advertising statements on its website and marketing materials, and in the endorsements it obtains, are misrepresentations of material fact that they know or should know are false.

162.    The TET Defendants intend that others rely upon their statements for the purpose of selling their "timeshare exit" services and to induce others to retain TET for those services.

163.    The TET Defendants' statements are made in bad faith and with malice or reckless indifference to Plaintiffs' interests, who, as a direct and proximate result of the foregoing, have been damaged.

164.    An injunction is a viable form of relief for violation of Fla. Stat. § 817.41.

  a.  The TET Defendants' actions, as outlined above, constitute misleading advertisement in violation of Fla. Stat. § 817.41.

  b.  The TET Defendants have procured unwarranted and unjustified contract breaches due to The TET Defendants' misleading advertisement in violation of Fla. Stat. § 817.41, so Plaintiffs have a substantial likelihood of success on merits.

  c.  The TET Defendants continue to solicit timeshare owners, such as Westgate Owners, through their misleading advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of its misleading advertisement is inadequate.

  d.  An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

165.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, punitive damages, attorneys' fees and costs incurred in this action, and such other and further relief as the Court may deem proper.

## COUNT VI: FALSE ADVERTISING
### UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)
#### (Against Defendant TET, Reed, Hein, and Parenteau)

166.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9, paragraphs 71 through 99, and paragraphs 106 through 109 above as if more fully set forth herein.

167.    This is a cause of action for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

168.    Plaintiffs are engaged in commerce within the control of Congress because they have a cognizable commercial interest in reputation or sales and fall within the zone of interest protected by 15 U.S.C. § 1125(a).

169.    As outlined above, TET, Reed, Hein, and Parenteau (the "TET Defendants") have made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation regarding its "timeshare exit" services.

47

170.     The TET Defendants purposefully insert themselves into the same marketplace in which Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners.  The TET Defendants' false advertising is directed both to Plaintiffs' existing client base and to prospective owners.

171.     In making false and misleading representations in their advertisements, the TET Defendants are in direct competition with Plaintiffs for the payments Westgate Owners owe to Plaintiffs: after deliberately maligning Plaintiffs' reputation, the TET Defendants specifically seeks out Westgate Owners to persuade them make payments to TET instead of to Plaintiffs.

172.     The TET Defendants have has solicited Westgate Owners through false and misleading advertising and marketing materials to induce Westgate Owners to cancel their timeshare interest without any factual or legal basis and stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

173.     Furthermore, the TET Defendants' false and fraudulent advertising and marketing, including on its website and through celebrity endorsements, falsely portrays timeshare developers and associations as scams, systematically engaging in fraudulent and deceptive conduct to market and sell timeshare interests.  Having targeted Plaintiffs and intentionally and purposefully tarnished Plaintiffs' business reputations and images with their false advertising, the TET Defendants then falsely portrays themselves as saviors, based on misrepresentations as to their ability achieve a favorable timeshare exit as an inducement to collect a large upfront fee, and falsely portray timeshare companies as more than willing to allow timeshare owners to "exit" their timeshares.

48

174.    The TET Defendants thus advertise to Plaintiffs' existing client base in order to persuade them to do business with TET instead of with Plaintiffs, and to withhold trade and divert monies due and owing to Plaintiffs under the Westgate Owners' contractual obligations instead to TET.  Westgate Owners are falsely told about TET's vague "exit process" that the TET Defendants claims is "proprietary" and offers a misleading "personal GUARANTEE . . . that our team of consumer advocates will get you out of your timeshare, period," when the TET Defendants know there is no legitimate basis for cancellation, no proprietary exit process, and no actual guarantee.  As a result of the TET Defendants' misrepresentations, Westgate Owners are deceived into believing that they should pay TET to obtain an illusory result rather than make payments to Plaintiffs as they are obligated to do by the very contracts that the TET Defendants falsely claim they can easily unwind.

175.    As to prospective owners, the TET Defendants' advertising pollutes the marketplace and discourages prospective owners from seeking to do business with Plaintiffs by falsely representing that it has obtained cancellation of thousands of timeshare owners' timeshare contracts, which would only be available on grounds of wrongdoing, fraud, or deceptive practices.    Thus, the TET Defendants' false statements of their exaggerated success lead consumers to believe erroneously that wrongdoing, fraud, or deceptive practices are rampant in the timeshare industry.

176.    The TET Defendants also make false and misleading comparisons between the cost of owning a timeshare and the cost of using TET's services in its printed advertisements sent to timeshare owners as means of persuading owners to retain them and breach their valid contracts with Plaintiffs.

177.    The TET Defendants' statements are not only literally false, but also are misleading when considered in their full context.

178.    The TET Defendants substantially injured Plaintiffs' business reputation by leading consumers and others in the trade to believe its false statements of fact about its services and by falsely stating, *inter alia*, that Plaintiffs are engaged in unlawful or illegal conduct.

179.    Additionally, the TET Defendants' statement that it guarantees it will relieve timeshare owners of their timeshare obligations if TET is retained are false or misleading or made in bad faith.

180.    The TET Defendants deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumers' purchasing decisions and resulting in damages to Plaintiffs.

181.    Plaintiffs suffered an injury to commercial and reputational interests based on the TET Defendants' misrepresentations, and materially false and deceptive statements about Plaintiffs, their brand, and products, all of which has induced Westgate Owners to stop making payments to Westgate in breach of their valid contracts with Westgate and to pay TET instead.

182.    An injunction is a viable form of relief for violation of the Lanham Act.

   a.    The TET Defendants actions, as outlined above, constitute false advertising in violation of 15 U.S.C. § 1125(a).

   b.    The TET Defendants have procured unwarranted and unjustified contract breaches due to their false advertising in violation of 15 U.S.C. § 1125(a), so Plaintiffs have a substantial likelihood of success on merits.

   c.    The TET Defendants continue to solicit timeshare owners, such as Westgate Owners, through their false advertising, which shows a strong

50

likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of their false advertising is inadequate.

d.    An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

183.    As a proximate result of the TET Defendants' unlawful conduct. Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM. BRANDON REED. TREVOR HEIN. and THOMAS PARENTEAU and request temporary and permanent injunctive relief, compensatory damages. special damages. lost profits, punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1117, and such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury to all issues so triable.

DATED _9th_ day of July, 2018.

Respectfully submitted.

By: _____

RICHARD W. EPSTEIN
(Trial Counsel)
Florida Bar No. 229091
MICHAEL E. MARDER
Florida Bar No. 251887
JEFFREY BACKMAN
Florida Bar No. 662501

51

BRIAN R. CUMMINGS
Florida Bar No. 25854
GREENSPOON MARDER LLP
201 East Pine St, Suite 500
Orlando, Florida 32801
Telephone:     (407) 425-6559
Facsimile:      (407) 209-3152

and

200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 491-1120
Facsimile: (954) 213-0140

and

401 E. Jackson Street, Suite 1825
Tampa, FL 33602
Telephone: (813) 769-7020
Facsimile: (813) 426-8582

Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
Richard.Epstein@gmlaw.com
Maria.Salgado@gmlaw.com
Michael.Marder@gmlaw.com
Trisha.Snyder@gmlaw.com
Brian.Cummings@gmlaw.com
Moneka.Simpson@gmlaw.com

52