UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WESTGATE RESORTS, LTD., et al.

      Plaintiffs,

v.                               Case No: 6:18-cv-1088-Orl-31DCI

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, et al.,

      Defendants.

_____/

## MOTION TO DISMISS PLAINTIFFS' COMPLAINT
## BY DEFENDANT REED HEIN & ASSOCIATES, LLC,
## BRANDON REED, TREVOR HEIN AND THOMAS PARENTEAU,
## AND SUPPORTING MEMORANDUM

Defendants Reed Hein & Associates, LLC, dba Timeshare Exit Team ("Timeshare Exit Team"), Brandon Reed, Trevor Hein and Thomas Parenteau, by and through their undersigned counsel, respectfully move this Honorable Court pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Complaint [Doc. 1]. The grounds supporting this motion are set forth in the Memorandum, below.

## MEMORANDUM

## I. INTRODUCTION

The timeshare industry has been plagued by fraudulent, deceptive, unfair, oppressive, and unconscionable practices, including violations and/or allegations of violations of a multitude of federal, state and local regulations, such as the Florida Consumer Collection Practices Act, the Fair Credit Reporting Act, the Telephone Consumer Protection Act, the Federal Trade Commission Act, the Securities Act of 1933, the Fair Housing Act, the Americans with

Disabilities Act, the Truth and Lending Act, the Home Mortgage Disclosure Act and Regulation C, the E-Credit Opportunity Act, the Interstate Land Sales Full Disclosure Act, the Telephone Consumer Protection Act, the Telemarketing Consumer Fraud and Abuse Prevention Act, the Graham-Leach-Bliley Act, the Deceptive Mail Prevention and Enforcement Act, the Bankruptcy Secret Act, the Civil Rights Act of 1964, 1968, and 1991 and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.  These practices have been the target of myriad consumer protection litigation brought by individuals, in class actions, and by state and federal agencies.

Defendant Timeshare Exit Team is in the business of helping consumers navigate the process of safely and legally exiting from oppressive timeshare contracts that the timeshare resorts should not have sold the consumers for many reasons, including financial, legal, and ethical reasons.  In particular, Timeshare Exit Team is committed to providing this valuable and important service because consumers, often after they were subjected to high-pressure sales presentations, frequently find themselves financially burdened by unwanted timeshares, for example, because the annual maintenance fees have risen exponentially since the date of the original contract, or because the consumers have suffered from health challenges or other changes in circumstances that prevent them from enjoying their timeshare ownership. Oftentimes the timeshares are purchased by elderly persons not adequately resistive to the intense hard-sell and high-pressured sales techniques or tactics that amount to impractical, improbable, overpriced and ultimately, unwanted contracts.  In many instances, these contracts are void, voidable or subject to modification.

Timeshare Exit Team believes consumers should have the right to legally exit from those timeshares.  Timeshare Exit Team's customers (including dissatisfied Westgate Resort timeshare

owners) execute limited powers of attorney authorizing Timeshare Exit Team to provide services. As conceded in Plaintiff's Complaint, Timeshare Exit Team (pursuant to these powers of attorney) retains attorneys to assist these customers. *See* Complaint, at ¶ 7. These law firms represent Timeshare Exit Team's customers in negotiations, arbitrations and litigation, in an effort to obtain relief for these customers from their unwanted timeshare contracts.

Plaintiffs Westgate Resorts, Ltd., Westgate Resorts, Inc., and the related Westgate entities bringing suit (collectively, "Westgate") are in the business of developing, financing, managing and selling timeshares in Florida and throughout the United States. *See* Complaint, at ¶ 2. Westgate is one of the largest resort developers in the United States. *Id.* There are several hundred thousand Westgate timeshare owners. *See* Complaint, at ¶ 71.

As this Court recognized in an order dismissing a complaint in a related case, *Orange Lake Country Club v. Reed Hein, LLC,* Case No. 17-cv-1542-Orl-GAP-DCI [Doc. 48, p. 2], timeshare developers like Westgate have "gone on the offensive" against law firms and consumer protection companies like Timeshare Exit Team who represent these owners. *Orange Lake Country Club v. Reed Hein, LLC,* Case No. 17-cv-1542-Orl-GAP-DCI, Doc. 48, p. 2.[1] In a misguided effort to thwart the departure of some of their dissatisfied timeshare owners, Westgate

---

[1] Timeshare Exit Team is presently aware of the following cases which are now pending in the Middle District and other courts: *Westgate Resorts, Ltd. v. Castle Law Group, PC,* US District Court, Middle District of Florida, Case No. 6:17-cv-1063-Orl-31-GAP-DCI; *Westgate Resorts, Ltd. v. Sussman,* US District Court, Middle District of Florida, Case No. 6:17-cv-01467-Orl-37-RBD-DCI; *Orange Lake Country Club, Inc. v. Castle Law Group, PC,* US District Court, Middle District of Florida, Case No. 6:17-cv-1044-ORL-31-GAP-DCI; *Diamond Resorts, International, Inc. v. Aaronson,* US District Court, Middle District of Florida, Case No. 6:17-cv-1394-Orl-37-RBD-DCI; *Club Exploria, LLC v. Aaronson,* US District Court, Middle District of Florida, Case No. 6:17-cv-576-Orl-28-JA-DCI; *Diamond Resorts, International, Inc. v. US Consumer Attorneys, PA,* US District Court, Southern District of Florida, Case No. 9:18-cv-80311-RLR; *Diamond Resort International, Inc. v. Reed Hein & Associates, LLC.,* US District Court, Nevada, Case No. 2:17-cv-03007-RFB-VCF; *Diamond Resorts International, Inc. v. Judson Phillips, Esq.,* US District Court, Middle District of Tennessee, Case No. 3:17-cv-01124; *Welk Resort Group Inc. v. Reed Hein & Associates, LLC,* US District Court, Southern District of California, Case No. 3:17-cv-01499-L-AGS; *Orange Lake Country Club, Inc., v. Finn Law Group, P.A,* Ninth Judicial Circuit Court in and for Orange County Florida, Case No. 2015-CA-000310-O; *Diamond Resorts Corporation v. Finn Law Group, PC.,* Ninth Judicial Circuit Court in and for Orange County Florida, Case No. 2017-CA-006199-O.

and its industry associates have been attempting to prevent law firms and consumer protection companies like Timeshare Exit Team (which hire and work with the law firms) from assisting consumers in obtaining relief from oppressive, unconscionable, and/or illegal timeshare contracts. At first, the timeshare developers initiated various public relations campaigns against law firms and consumer protection companies like Timeshare Exit Team. More recently, the timeshare developers, including Westgate, have engaged in scorched-earth litigation throughout the U.S. against the consumer protection companies and law firms. The goal of this litigation is simple: to prevent the law firms from representing these timeshare owners and to put consumer protection companies like Timeshare Exit Team out of business.

Westgate's Complaint attempts to plead a far-ranging collection of tort and fraud claims against Timeshare Exit Team based upon rambling, vague, and conclusory allegations that Timeshare Exit Team has utilized unlawful and fraudulent business practices while marketing and performing services for consumers. The Complaint contains numerous legal deficiencies and fails to state any cognizable claims pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

Westgate attempts in its Complaint to frame Timeshare Exit Team's advertising and the services it provides to consumers as deceptive and unfair, claiming such advertising "lures" timeshare owners to breach their contracts. In doing so, Westgate is attempting to reduce, if not eliminate, the ability of timeshare purchasers to exercise their right to seek out assistance to obtain relief from their timeshare contracts. The Complaint is nothing more than another phase of a public relations campaign to deter consumers from asserting their rights, and representatives of such consumers, like Defendants, from advocating those rights. Westgate thereby attempts to drive small consumer protection companies, like Timeshare Exit Team, and small law firms that

work with these companies, like Defendants Ken B. Privett, PLC and Schroeter, Goldmark &

Bender, PS, out of business via costly litigation. Allowing Westgate to continue to bring these

meritless claims only produces a chilling effect on consumer rights and impedes such

consumers' access to legal representation. Further, as part of its public relations offensive

brought in the form of dubious claims, Westgate also names as defendants three employees of

Timeshare Exit Team, that is, Defendants Brandon Reed, Thomas Parenteau, and Trevor Hein.

Timeshare Exit Team respectfully submits that the Court should not allow Westgate's

legally defective claims as set forth in the Complaint to continue.

## II. BACKGROUND

In essence, all of Westgate's claims are based upon the following alleged conduct, which

is sparsely alleged, let alone not actionable and unremarkable:

1) Timeshare Exit Team guarantees its customers -- including Westgate timeshare owners -- that it will refund 100% of its fees if it is unable to obtain a successful result for the customer;

2) Timeshare Exit Team represents to its customers -- including Westgate timeshare owners -- that they can cancel their contracts with timeshare companies;

3) Timeshare Exit Team instructs its customers -- including Westgate timeshare owners -- to cease making payments of maintenance, taxes, and note and mortgage payments to timeshare developers;

4) Timeshare Exit Team tells its customers that it will "interface" between the customer and the law firm Timeshare Exit Team hires to assist the customer and Timeshare Exit Team; and

5) Timeshare Exit Team instructs the law firms that Timeshare Exit Team hires (as representatives of its customers) to send demand letters to timeshare developers – including Westgate – on behalf of the customers.

*See* Complaint, at ¶¶ 3, 5, 6, 9, 50, 51, 93, 106. These allegations are replete with legal flaws,

and are insufficient to state a claim

## III.  ARGUMENT

**A.      General legal standards.**

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir. 1994).  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations."  *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  Finally, "[r]egardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law."  *Supreme Fuels Trading FZE v. Sargeant*, 2009 U.S. Dist. LEXIS 118142, *8 (S.D. Fla. 2009) (citing *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).  *See also Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1205 (M.D. Fla. 2002).

Where a complaint alleges misrepresentations grounded in fraud under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"), the plaintiff must plead the alleged fraud with ***particularity*** pursuant to Rule 9(b), Federal Rules of Procedure.  *See, e.g. Koch v. Royal Wine Merchants, Ltd*., 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012).  With respect to claims of false advertising pursuant to § 817.41, Fla. Stat., Rule 9(b)'s

particularity requirement similarly applies. *See, e.g., USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *2 (S.D. Fla. 2016). Accordingly, Westgate's claims for false advertising under FDUTPA and under § 817.41, Fla. Stat., must be pled with particularity if they are to survive dismissal.

**B.     The Complaint fails to state a claim for tortious interference with Contract (Count 1).**

To survive a motion to dismiss on its tortious interference claim, Westgate must plead: 1) the existence of a contract under which Westgate has rights; 2) Timeshare Exit Team's knowledge of that contract; 3) Timeshare Exit Team's intentional procurement of the contract's breach; 4) the absence of any justification or privilege; and 5) that Westgate suffered damages as a result of Timeshare Exit Team's interference. *See Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007); *Hush Little Baby, LLC v. Chapman*, 2015 WL 9165909, *8 (M.D. Fla. 2015); *Pelc v. Nowak*, 2012 U.S. Dist. LEXIS 87007, at *4-5 (M.D. Fla. 2012).  It is well-established under Florida law that to be liable for tortious interference, a defendant must have both "an intent to damage the business relationship and a lack of justification" for doing so.  *See Smith v. Emery Air Freight Corp.*, 512 So.2d 229, 230 (Fla. 3d DCA 1987).

As set forth below, Westgate's allegations fall short of its burden of pleading the necessary elements of this tort.  Moreover, Westgate names Brandon Reed, and Trevor Hein and Thomas Parenteau in their individual capacities as defendants in the Complaint as to this claim. Even if Westgate's allegations against Timeshare Exit Team were otherwise sufficient, the factual allegations concerning these individuals for the same conduct fails to set forth how the three individual defendants engaged in the challenged practices.

1.      **Westgate fails to identify the *specific* contracts (or relationships) with which Timeshare Exit Team allegedly interfered.**

The law is well-settled that a claim for tortious interference may not be based upon relationships with a nebulous group of third parties. *See Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, 821 (Fla. 1996); *see also Centennial Bank v. ServisFirst Bank Inc.*, 2016 U.S. Dist. LEXIS 106406, at * 41 (M.D. Fla. 2016); *Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.*, 2008 U.S. Dist. LEXIS 35073, at * 45-46 (M.D. Fla. 2008). Here, Westgate has completely failed to specify those contracts and relationships with which Timeshare Exit Team allegedly interfered. Furthermore, Westgate has failed to demonstrate that a single breach of any valid contract has occurred due to the intentional acts of Timeshare Exit Team. Westgate instead refers to a nebulous group of "identifiable Westgate Owners" whose contracts were interfered with, without providing any information with regard to the identities of these affected "Owners." *See* Complaint, ¶¶ 6, 8, 79, 81, 84, 90, 95, 98, 106, 128(d). Given the failure by Westgate to set forth the identities of the third-party Westgate owners with whom Timeshare Exit Team allegedly interfered, as well as the complete absence of factual allegations establishing that the specific intentional conduct caused the breach, this claim should be dismissed. *See Ferguson Transp., Inc,* at 821.

2.      **Timeshare Exit Team cannot have interfered with the contracts as a matter of law because it was an *agent and/or representative* of the Westgate owners.**

It is axiomatic that a party cannot interfere with its ***own contract***. *See, e.g., Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676-77 (Fla. 1st DCA 1991); *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). In addition, agents or representatives acting for and on behalf of a principal within his capacity and scope as an agent cannot be held liable for tortious interference. *See, e.g., Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d

963, 965 (Fla. 4th DCA 2002); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *see also Abruzzo v. Haller*, 603 So.2d 1338, 1339-41 (Fla. 1st DCA 1992). Further, the interfering defendant must be a third party and "a *stranger* to the business relationship." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (emphasis added); *see also Salit,* at 386.

Westgate's own allegations establish that Timeshare Exit Team (and Brandon Reed, Trevor Hein, and Thomas Parenteau, as representatives of Timeshare Exit Team) are hired by, and work for the Westgate owners to assist them in exiting from their contracts with Westgate. *See* Complaint, ¶¶ 51, 60, 64, 68, 79, 176, 179. As agents or representatives of the timeshare owners, Timeshare Exit Team cannot, as a matter of law, have interfered with any contract to which their clients were a party. This would be tantamount to a party interfering with its own contract. *See Richard Bertram, Inc.*, at 965.

**3. Westgate has failed to allege that Timeshare Exit Team's actions were *unjustified*.**

Westgate's Complaint fails to allege sufficient facts to support a theory that Timeshare Exit Team's actions were unjustified as a matter of law. It is well-established that for "the interference to be unjustified, the interfering defendant must be a third party, a ***stranger*** to the business relationship." *Treco*, at 1289; *see also Salit*, at 386. However, a defendant "is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Treco*, at 1289 (citation omitted) (internal quotation marks omitted). This includes transactions in which a defendant has an "interest in how the relationship is conducted or a potential ***financial interest*** in how a contract is performed." *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1094 (Fla. 4th DCA 2009).

Based upon the allegations in Westgate's Complaint, Timeshare Exit Team could not tortiously interfere with Westgate's contracts with the timeshare owners/Timeshare Exit Team customers. Timeshare Exit Team was not a "stranger" to those contracts and had a clear financial interest in how the contracts were performed. As stated *supra*, Westgate's own allegations establish that Timeshare Exit Team is hired by the owners to assist them in exiting from their timeshare contracts. *See* Complaint, ¶¶ 51, 60, 64, 68, 79, 176, 179. These allegations clearly show that Timeshare Exit Team has a financial or economic interest in these contracts. As such, Timeshare Exit Team is not a stranger to these contracts and cannot "tortiously interfere" with them. *See Treco*, at 1289; *Palm Beach,* at 1094; *Salit*, at 386.

4.    **The Complaint fails to allege sufficient facts that Timeshare Exit Team's actions amounted to *direct and intentional* interference.**

Westgate's tortious interference claim should also be dismissed because the Complaint fails to establish a direct, intentional interference by Timeshare Exit Team. "To be liable for tortious interference, the offending party's interference must be both direct and intentional." *Romika-USA, Inc. v. HSBC Bank USA, N.A.,* 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (internal quotation marks omitted) (citation omitted); *see also Ethyl Corp. v. Balter,* 386 So.2d 1220, 1223 (Fla. 3d DCA 1980) ("direct interference ... is indispensable to the existence of an actionable wrong" for tortious interference). In essence, Timeshare Exit Team is no different than any of the multitude of financial advisors who enable consumers to negotiate, reduce or even eliminate debt. Such financial assistance services have not been deemed to constitute tortuous interference. Further, under Florida law, a party's "predisposition to breach" precludes any finding that it was induced to breach by a third party. *See Ingenuity, Inc. v. Linshell Innovations, Ltd*., 644 Fed. Appx. 913, 916 (11th Cir. 2016); *see also Lake Gateway Motor Inn,*

*Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So.2d 769, 772 (Fla. 4th DCA 1978) (questioning whether the business relationship could hardly be considered mutually advantageous when it had already deteriorated). Finally, a defendant does *not* tortiously interfere with a contract if that defendant merely assists someone who decides to breach the contract. *See Winmark Corp. v. Hill,* 2009 U.S. Dist. LEXIS 29687, at *4 (D. Minn. 2009).

In its Complaint, Westgate does not allege that Timeshare Exit Team directly interfered with Westgate's contracts with the owners, but instead alleges that Timeshare Exit Team is a "consumer protection group" and "consumer advocate" that helps to "relieve timeshare owners of their obligations…." *See* Complaint, ¶ 3. It is clear from the pleadings that Timeshare Exit Team does not actively seek out Westgate owners as clients, but instead offers its consumer protection/advocate services to the general public through radio, social media, and its website. *See, e.g.,* Complaint, ¶ 80. Moreover, the allegations are clear that Westgate Owners and other timeshare owners voluntarily contact Timeshare Exit Team because they are already dissatisfied with Westgate and seeking to renegotiate their timeshare contracts. It is not subject to reasonable dispute that were these Westgate owners satisfied with their timeshares, they would not seek out Timeshare Exit Team's assistance. In other words, Timeshare Exit Team is not causing the owners to breach their contracts with Westgate and other timeshare developers, but rather assisting individuals in obtaining a termination of their unwanted contracts, in some cases by hiring attorneys to accomplish that end. Moreover, it is apparent from the allegations that the timeshare developers, like Westgate, ***agree*** to these resolutions negotiated by Timeshare Exit Team and the law firms, and thus consent to release the owners from these obligations. *See, e.g.,* Complaint, ¶ 9. However, even if Timeshare Exit Team were somehow assisting the owners in breaching their contracts (despite the fact that the timeshare developers, including Westgate,

release them of these obligations), such assistance would not constitute tortious interference. *See Ingenuity,* at 916; *Winmark,* at *4.

Westgate additionally alleges that Timeshare Exit Team and its representatives instruct "identifiable Westgate Owners" to stop making payments on their timeshare obligations. *See* Complaint, at ¶¶ 6, 50, 53, 56, 84, 106, 114, 115, 117, 158, 172, 181. Assuming, *arguendo,* that such an instruction either by an employee of Timeshare Exit, this allegation is expressly controverted by the Timeshare Exit Team customer contract that Westgate cites in its Complaint. As alleged in the Complaint, such contract provides, in pertinent part:

> RESORT FEES. You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete.

Complaint, at ¶ 90. Accordingly, Westgate's claim for tortious interference with contract must fail and Count 1 should be dismissed.

**C.    The Complaint fails to state a claim for violation of FDUTPA (Count 2).**

**1.    The claim for violation of FDUTPA lacks the particularity required under Rule 9(b).**

Westgate alleges that Timeshare Exit Team "solicits owners of timeshare interests … through the use of fraudulent, misleading, and deceptive advertising." Complaint, ¶ 48; *see also* Complaint, ¶¶ 49, 60, 61, 64, 65, 68, 69. Because Westgate claims advertising misrepresentation that is grounded in fraud, Westgate is required to plead the alleged fraud with particularity pursuant to Rule 9(b) *See, e.g., Koch v. Royal Wine Merchants, Ltd*., 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012); *Garcia v. Santa Maria Resort, Inc*., 528 F. Supp. 2d 1283, 1294 (S.D. Fla.

2007) (same); *Stires v. Carnival Corp.*, *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (directing plaintiff to replead FDUTPA damages with particularity).[2]

This Court has previously ruled on a motion to dismiss a FDUTPA claim in *Orange Lake Country Club, Inc. v. Castle Law Group, PC.*  In that case, the timeshare developer alleged that Castle Law's "advertising and marketing materials … falsely induce [timeshare owners] to stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay." *Orange Lake Country Club, Inc. v. Castle Law Group, PC* (M.D. Fla., Mar. 29, 2018, No. 6:17-cv-1044-ORL-31-DCI) 2018 WL 1535719, *5.  Here, however, Westgate has not and cannot allege that any advertising or marketing materials distributed by Timeshare Exit Team to the general public contained false inducements to timeshare owners to enter into contracts with Timeshare Exit Team. Under Rule 9, Westgate's FDUTPA claim fails to pass muster.

First, the Complaint's allegations against Brandon Reed, Trevor Hein and Thomas Parenteau are insufficient to state a claim under Rule 9(b).  There are no allegations meeting the strictures of 9(b), including what false and misleading statements were made by the three individual Defendants; why the statements are false and misleading (most of them on their face are neither false nor misleading); which of the three individual Defendants made the false and misleading statements; to whom each of the three individual Defendants made the false and

---

[2] *See also North Brevard Hospital District v. McKesson Technologies, Inc.*, 2017 WL 951672, at *5 (M.D. Fla. 2017) (violations of FDUTPA must be pled with particularity); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *3 (S.D. Fla. 2016); *Librizzi v. Ocwen Loan Servicing, LLC*, 2015 WL 4761647, at *9 (S.D. Fla. 2015) (Rule 9 applies to FDUTPA claim where defendant alleged to have violated FDUTPA "through deception"); *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. 2011); *D.H.G. Properties, LLC v. Ginn Companies, LLC*, 2010 WL 5584464, at *5 (M.D. Fla. 2010) (FDUTPA claim sounded in fraud and was subject to Rule 9(b)); *Siever v. BW Gaskets, Inc.*, 2009 U.S. Dist. LEXIS 20691, at * 3 (M.D. Fla. 2009) (FDUTPA must be pled with particularity); *Wrestle Reunion, LLC v. Live Nation Television Holdings, Inc.*, 2008 U.S. Dist. LEXIS 61428, at *3 (M.D. Fla. 2008) (same).

misleading statements; how the recipient relied upon the false and misleading statements; or what damage was caused by the alleged false and misleading statements. As to *what* false and misleading statements were made, Westgate makes amorphous allegations at best. For example, Westgate alleges that the three individual Defendants conceal their identities as "orchestrator[s] of a fraudulent scheme directed at timeshare companies," (Complaint, ¶ 59, 63, 67); that they "use[] TET as a mere instrumentality or business conduit to perpetuate a fraud" on timeshare owners and for the purpose of "operating a fraudulent timeshare exit scheme" (Complaint, ¶ 58, 62, 66, 138, 148); that they "orchestrated, supervised, and directed" a "deceptive advertising campaign" (Complaint, ¶¶ 61, 65, 69, 131); that they "makes false and misleading" representations through a variety of marketing methods (Complaint, ¶ 60, 61, 64, 65, 68. 69, 77, 80, 114, 115, 158, 160, 172 ); that they use Timeshare Exit Team to "hire the attorneys to execute TET's advertised 'proprietary process'" (Complaint, ¶ 93); and that they "solicit[] timeshare owners using false and misleading advertising with, *inter alia*, the purpose of tortiously interfering with Westgate's existing contracts with owners of Westgate timeshare interests" (Complaint, ¶ 77).

The alleged statements, for the most part, do not constitute statements of fact, and the allegations are insufficient as to *how* such statements could be false or misleading. For example, Timeshare Exit Team's purported statement that it guarantees it will relieve timeshare owners of their timeshare obligations (Complaint, ¶¶ 3, 159, 179) clearly constitutes puffery and other non-actionable opinions. *See MDVIP, Inc. v. Beber,* 222 So.3d 555, 561 (Fla. 4th DCA 2017) (holding that a promise to deliver an "exceptional" product or service is a matter of opinion rather than fact, and constitutes non-actionable puffery). Such puffery is substantially similar to Westgate's allegations that Timeshare Exit Team represented to its customers that it would

achieve the "ultimate positive result" (Complaint, ¶ 90); that it would act "safely" and "legitimately" in representing its customers (Complaint, ¶ 82); that it had a "unique strategy" (Complaint, ¶ 84). These types of statements merely constitute promises of future action and predictions of future events which are not actionable. *Id.*

Westgate additionally alleges that Timeshare Exit Team and the law firms that Timeshare Exit Team hires on behalf of it is customers instructs those customers to stop making payments on their timeshare obligations timeshare companies would be "more willing" to allow Timeshare Exit Team's customers to exit their contracts. Complaint, at ¶ 84. Westgate fails, however, to identify *to whom* the statements were made. While Westgate uses the term "identifiable Westgate Owners" throughout the Complaint, it does not identify any of the recipients of the allegedly false and misleading statements. *See* Complaint, at ¶ 84. While Westgate alleges that the three individual Defendants "directed" Timeshare Exit Team representatives to make certain false statements (*see* Complaint, at ¶ 84), Westgate fails to allege what false statements these individuals directed others to make; which of the three individual Defendants directed which Timeshare Exit Team representatives to make the false statements; or when and how these unidentified Timeshare Exit Team representatives communicated the false statements to recipients, the identity of the recipients, or how or when the unidentified Timeshare Exit Team representatives communicated the false statements.

In addition to lacking specificity with respect to Defendants Reed, Hein and Parenteau, Westgate's FDUTPA claim against Defendant Timeshare Exit Team (the LLC) is pled in a vague and conclusory manner, involving only a formalist recitation of the elements of the claim. As set forth above, Westgate's entire FDUTPA claim is limited to the sparse allegations in paragraph

128, including Timeshare Exit Team's alleged failure to provide its customers with a money-back guarantee.

This Court previously ruled on a motion to dismiss a FDUTPA claim in a similar case, *Westgate Resorts, Ltd. v. Castle Law Group, PC.* In granting Castle Law's motion to dismiss Westgate's FDUTPA claim, this Court opined, "The misrepresentations set forth in the Second Amended Complaint would have caused harm, if at all, to the consumers that they targeted -- the Westgate Owners, who were (allegedly) solicited and retained under false pretenses -- rather than the Plaintiffs." *Westgate Resorts, Ltd. v. Castle Law Group, PC*, 2017 WL 6512552, at * 5 (M.D. Fla. 2017).

Here, Westgate similarly bases its FDUTPA claim on various representations that Timeshare Exit Team makes to its customers, none of which harms the reputation of Westgate. To the extent that Westgate attempts to avoid dismissal by additionally alleging that Defendants instruct Westgate owners to stop paying on their timeshare obligations and/or that such owners' credit stores will be unaffected by halting their payments, Westgate has not and cannot allege that such instructions are contained in Timeshare Exit Team's advertising. Thus, as in this Court's ruling granting dismissal of Westgate's FDUTPA claim in *Castle Law*, dismissal as to the FDUTPA claim is warranted here.

With respect to the guarantee, Westgate does not allege with particularity as to why Timeshare Exit Team's guarantee is somehow fraudulent. In some of the allegations, Westgate suggests that Timeshare Exit Team's alleged statement regarding a "guarantee" refers to its ability or expectation to obtain future results. *See* Complaint, at ¶ 128(b). However, Westgate also alleges that Timeshare Exit Team has offered its consumers a "money-back guarantee" or

refund assuming it is not able to obtain a successful negotiation. *See* Complaint, ¶ 96. Accordingly, the allegations of fraud, in addition to being vague and conclusory, are ambiguous.

In short, there are no facts in the complaint to show a "probable deception" that is "likely to cause injury to a reasonably relying consumer". Indeed, there are no allegations at all that the actual consumers (purchasers of timeshares) have been harmed by Timeshare Exit Team's conduct. As such, this claim not only fails to satisfy Rule 9(b), but also the minimum pleading requirements set forth in Rule 8(a).

Finally, the rambling, conclusory and disjointed allegations contained in the general allegations of the Complaint do not support or otherwise relate the allegations in paragraph 128 of the Complaint (under Count 5) which, according to Westgate, form the basis of its FDUTPA claim. Rather, the general allegations are merely an amalgamation of derogatory and nonmaterial assertions, ranging from Timeshare Exit Team's innocuous marketing language that it attempts to obtain an "ultimate positive result" for its customers (¶ 90); advertising language which asks if the customer is "tired" of his or her timeshare (¶ 82); and the fact that Timeshare Exit Team offers a free consultation (¶ 87). Such allegations are pure "fluff" and "filler", and immaterial to the four sparse and inconsequential allegations contained in ¶ 128 that allegedly form the basis of Westgate's FDUTPA claim, including Timeshare Exit Team's alleged inability to perform its guarantee with its customers. Indeed, such allegations underscore the great deficiencies inherent in Westgate's claims.

## 2. Westgate lacks standing to bring a FDUTPA claim.

Westgate lacks standing to bring a FDUTPA claim because, unlike Timeshare Exit Team's customers, Westgate is not a consumer. It is well settled that FDUTPA was enacted to protect consumers from suppliers who commit deceptive trade practices and to prohibit unfair

competition methods. *See Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131, at * 10-11 (M.D. Fla. 2012); *Nat'l Alcoholism Programs v. Palm Springs Hosp. Emp. Benefit Plan*, 825 F. Supp 299, 302 (S.D. Fla. 1993). The Florida legislature intended to create a statutory cause of action to allow citizens to recover damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts. *See Dobbins*, at * 10-11; *Delgado v. J.W. Courtesy Pont. GMC-Truck*, 693 So.2d 602, 606 (Fla. 2d DCA 1997). As such, FDUTPA was enacted within Chapter 501, entitled "Consumer Protection." As stated in the statute itself, the overall purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Section 501.202(2), Fla. Stat. (emphasis added).

### 3. Westgate's Complaint fails to state a claim under FDUTPA.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626 (11th Cir. 2015) (per curiam) (quoting Fla. Stat. § 501.204(1)). Stating a claim under the FDUTPA requires a plaintiff to "allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of 'probable, not possible deception' that is 'likely to cause injury to a reasonably relying consumer.' " *Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421532, at *3 (M.D. Fla. 2017) (citations omitted).

As set forth above, all Westgate's claims, including the FDTUPA claim, are based upon the following sparse and nonactionable allegations of conduct:

1) Timeshare Exit Team guarantees its customers -- including Westgate timeshare owners -- that it will refund 100% of its fees if it is unable to obtain a successful result for the customer;

2) Timeshare Exit Team represents to its customers -- including Westgate timeshare owners -- that they can cancel their contracts with timeshare companies;

3) Timeshare Exit Team instructs its customers -- including Westgate timeshare owners -- to cease making payments of maintenance, taxes, and note and mortgage payments to timeshare developers;

4) Timeshare Exit Team tells its customers that it will "interface" between the customer and the law firm Timeshare Exit Team hires to assist the customer and Timeshare Exit Team; and

5) Timeshare Exit Team instructs the law firms that Timeshare Exit Team hires (as representatives of its customers) to send demand letters to timeshare developers -- including Westgate -- on behalf of the customers.

*See* Complaint, at ¶¶ 3, 5, 6, 50, 51, 93, 106. As an initial matter, statements of opinion and predictions of future are not actionable is fraud. *See MDVIP, Inc., supra,* at 561 (promise to deliver exceptional product or service is a matter of opinion rather than fact). For example, Timeshare Exit Team's statement that it "guarantees it will relieve timeshare owners of their timeshare obligations" clearly constitutes puffery and other nonactionable opinions. Such a statement is similar to Westgate's allegation that Timeshare Exit Team represented to the timeshare owners that it would achieve the "ultimate positive result"; it would act "safely" and "legitimately" in representing the owners; that it had a "unique strategy"; the timeshare companies would be "more willing" to allow the owners to exit their contracts if Timeshare Exit Team is hired; and Timeshare Exit Team "guarantees" its results. *See* Complaint, ¶ 84. These

types of statements merely constitute promises of future action and predictions of future events which are not actionable.

On the other hand, assuming the "guarantee" refers to the **refund** in Timeshare Exit Team's agreement with its customers, it also does not constitute a false statement. Other than puffery, the only other possible meaning of Timeshare Exit Team's alleged statement that it "guarantees" its results would relate to Westgate's allegations that Timeshare Exit Team provides its customers with a money back guarantee to provide a refund if Timeshare Exit Team is not successful. *See* Complaint, ¶ 9. However, such a guarantee would simply constitute a material term of the **agreement** between Timeshare Exit Team and its customers. It is also telling that there are no allegations in the Complaint that Timeshare Exit Team failed to issue any refunds to its customers, thus breaching the 100% money-back guarantee. However, assuming Timeshare Exit Team failed to issue refunds to its customers, that failure would not cause any damage to Westgate, who is not a party to the contracts between Timeshare Exit Team and its customers.

Similarly, Westgate alleges that Timeshare Exit Team misrepresents to its customers that the customers can cancel their contracts with the timeshare companies. It is clear from the allegations that the purpose of Timeshare Exit Team, and the law firms Timeshare Exit Team retains on behalf of its consumers, is to negotiate an exit (or termination) of the timeshare contract between Timeshare Exit Team's customers and the timeshare developers, including Westgate. That is the primary subject matter and objective of the contract between Timeshare Exit Team and its customers. In addition, as an essential part of the negotiations, it is also clear from the allegations that the timeshare companies, including Westgate, are required to ultimately agree to release Westgate owners/Timeshare Exit Team customers from their contracts; if not,

Timeshare Exit Team agrees to issue a refund to the customers. Accordingly, the statement that the customers can cancel their contracts is not false. It is a statement of opinion as to a future event which is a term of a contract.

Westgate's allegations that Timeshare Exit Team promises, but fails to "interface" between the costumers and the attorneys assigned to assist them in obtaining an exit from their timeshare contracts is equally tenuous. Complaint, ¶¶ 93, 128(c). Again, the promise to "interface" between the costumers and their attorneys is a minor contractual term between Timeshare Exit Team and the customer, and lacks materiality and the element of reasonable reliance. Assuming Timeshare Exit Team can obtain a successful exit of the customer's timeshare, the customer would not care whether Timeshare Exit Team "interfaced" between the customer and the law firm.

Finally, the allegation that Timeshare Exit Team instructs the law firms to send certain demand letters is not deceptive, material or a statement upon which reasonable reliance. There are no allegations that these instructions are even communicated to the customers. In addition, it is clear from the allegations that the customers agree that Timeshare Exit Team will hire an attorney. It is highly unlikely that Timeshare Exit Team would be making legal decisions on behalf of the law firms representing the customers. However, assuming Timeshare Exit Team requests that an attorney take action, it would hardly constitute fraud. Rather, it would be no different than the customer asking the attorney to send a demand letter. At the end of the day, if sending such a demand letter results in a successful termination of an oppressive timeshare contract, there is no harm to the customer.

**D.** **The Complaint fails to state a claim for false advertising under the Lanham Act (Count 6).**

The Lanham Act is intended to "protect persons engaged in commerce within the control of Congress against unfair competition" -- that is, against "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1389-90 (2014) (citation and internal alterations omitted). A plaintiff alleging a claim of false advertising in violation of Section 43(a) of the Lanham Act must adequately plead, and ultimately prove, that: 1) the advertisements of the opposing party were false or misleading; 2) the advertisements deceived, or had the capacity to deceive, consumers; 3) the deception had a material effect on purchasing decisions; 4) the misrepresented product or service affects interstate commerce; and 5) the movant has been -- or is likely to be -- injured as a result of the false advertising. *Id.* (citations omitted). *Global Tech LED, LLC v. HiLumz Int'l Corp.,* 2017 U.S. Dist. LEXIS 20512, *8-9 (M.D. Fla. 2017).

Westgate's claim that Timeshare Exit Team violated the Lanham Act is yet again limited to the following vague, sparse, and conclusory allegation: The Timeshare Exit Team Defendants' "statement that it guarantees it will relieve timeshare owners of their timeshare obligations if [Timeshare Exit Team] is retained are false or misleading or made in bad faith." *See* Complaint, ¶ 179. As set forth below, such tenuous and conclusory allegations will not support a claim under the Lanham Act.

This Court previously ruled on a motion to dismiss Westgate's similar claim under the Lanham Act in *Castle Law.* In granting dismissal of Orange Lake's Lanham Act claim, this Court reasoned:

> Castle Law argues that the Plaintiffs have failed to state a claim because the harm they claim to have suffered -- injury to their reputation caused by the Defendants "leading consumers and others in the trade to believe [their] false statements of fact about [their] services and by falsely stating, inter alia, that Plaintiffs are engaged in unlawful or illegal conduct" -- could not have happened as a result of

the allegedly false statements cited by the Plaintiffs. In this, Castle Law is correct. Misleading potential clients about Castle Law's success rate in getting timeshare owners out of their contracts does not harm the reputation of timeshare developers or lenders. And none of the cited advertising states that the Plaintiffs are engaged in unlawful or illegal conduct. [The Lanham Act claim] will therefore be dismissed without prejudice.

*Orange Lake Country Club, Inc. v. Castle Law Group, P.C.* 2018 WL 1535719, at * 7 (M.D. Fla. 2018). Similarly, here, none of Timeshare Exit Team's advertising cited in the Complaint states that Westgate is engaged in unlawful or illegal conduct. Accordingly, Westgate has not (and cannot) claim injury to its reputation caused by the allegedly false statements cited by Westgate in the Complaint.

### 1. Timeshare Exit Team's alleged statement regarding a "guarantee" is not false or misleading.

Under the Lanham Act, "literally false statements and statements that are literally true, but misleading," are actionable. *Global Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669, at *6 (M.D. Fla. 2017) (citations omitted). On the other hand, statements of puffery or opinion generally are not. *See id.*; *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999), *aff'd sum. nom.* 207 F.3d 663 (11th Cir. 2000). Puffery is described as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *BellSouth*, at 1320. It involves "outrageous generalized statements, not ... [s]pecific claims that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

Like puffery, other non-actionable opinions involve predictions that do not lend themselves to "empirical verification." *See Global Tech*, 2017 WL 588669, at *6. Non-actionable opinions include predictions about the future. *Id.* (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *Cavic v. Grand*

*Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir. 1983) (promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made); *MDVIP, Inc., supra, at 561* (promise to deliver exceptional product or service is a matter of opinion rather than fact). When evaluating the falsity of an advertisement, "a court must analyze the message conveyed in full context and must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F.Supp.2d 1359, 1377 (S.D. Fla. 2010) (dismissing Lanham Act false advertising claim).

Timeshare Exit Team's statement that it "guarantees it will relieve timeshare owners of their timeshare obligations" (Complaint, ¶ 179) clearly constitutes puffery and other non-actionable opinions under the Lanham Act. Such a statement is substantially similar to Westgate's allegations that Timeshare Exit Team represented to its customers that it would achieve the "ultimate positive result;" it would act "safely" and "legitimately" in representing its customers; that it had a "unique strategy;" and Timeshare Exit Team "guarantees" its results. *See* Complaint, ¶¶ 82, 64, 94. These types of statements merely constitute promises of future action and predictions of future events which are not actionable under the Lanham Act. *See Cavic*, at 883; *MDVIP, supra,* at 561.

As stated above, other than puffery, the only other possible meaning of Timeshare Exit Team's alleged statement that it "guarantees" its results would relate to Westgate's allegations that Timeshare Exit Team provides its customers with a "100% guarantee" to provide a refund if Timeshare Exit Team is not successful. *See* Complaint, ¶ 9. Assuming the "guarantee" upon which Westgate base its claim refers to the refund in Timeshare Exit Team's customer

agreements, such a statement also cannot constitute a false or misleading representation contemplated by the Lanham Act.

Rather, such a guarantee would constitute a material term of the agreement between Timeshare Exit Team and its customers. Courts have held that breach of contract disputes are not within the jurisdiction of the Lanham Act. *See Silverstar Enters. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y. 1982); *Kitty Walk Sys. v. Midnight Pass, Inc.*, 431 F. Supp. 2d 306, 310 (E.D.N.Y. 2007). There is no cognizable claim Westgate can state under the Lanham Act that Timeshare Exit Team's contractual money-back guarantee -- a contract provision requiring a refund -- somehow misrepresented the "nature, characteristics, qualities, or geographical origin" of Westgate's timeshare properties. *See Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

It is also telling that there are no allegations in the Complaint that Timeshare Exit Team failed to issue any refunds to its customers, thus breaching the 100% money-back guarantee. However, even assuming Timeshare Exit Team failed to issue refunds to its customers, that failure would not cause any damage to Westgate, who are not parties to the contracts between Timeshare Exit Team and its customers.

> **2.**     **Timeshare Exit Team's alleged statement regarding the guarantee does not constitute "commercial advertising or promotion" required under the Lanham Act.**

To come within the scope of the Lanham Act, a plaintiff must show that the statements occurred within the context of "commercial advertising or promotion," which has been defined to include: 1) commercial speech; 2) by a defendant who is in ***commercial competition*** with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services; and 4) the representations … must be disseminated sufficiently to the relevant purchasing public to

constitute "advertising" or "promotion" within that industry. *Tobinick v. Novella,* 848 F.3d 935, 950-51 (11th Cir. 2017) (emphasis added); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012).

In the instant case, Westgate is engaged in the business of developing, financing, managing and selling timeshares in Florida and throughout the United States. *See* Complaint, at ¶ 2. Timeshare Exit Team, however, does none of these things. Rather, it operates a service that assists owners in existing timeshares that have already been purchased.

The parties are in no way involved in competitive advertising under the meaning of subsection (2). The facts of this case simply do not fall within the context of "commercial advertising or promotion," and therefore, this case does not come within the ambit of the Lanham Act. On this issue alone, Westgate's claim under the Lanham Act fails.

3. **The challenged advertisements at issue do not fall under the zone of protected interests.**

As the Supreme Court explained in *Lexmark*, the Lanham Act should not be read expansively "to allow all factually injured plaintiffs to recover." *Lexmark,* at 1388. Rather, the statutory cause of action extends only to plaintiffs "whose interests fall within the zone of interests protected by the law invoked" and "whose injuries are proximately caused by violations of the statute." *Id.* at 1388-91. To satisfy this requirement, the plaintiff must allege: 1) "an injury to a commercial interest in reputation or sales" and 2) an "economic or reputational injury flowing ***directly*** from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1390-91 (emphasis added). In addition, the alleged harm must have a "sufficiently close connection to the conduct the statute prohibits." *Congoo, LLC v. Revcontent LLC*, 2017 U.S. Dist. LEXIS

183798 (D.C.N.J. 2017) (holding that Lanham Act did not apply where there was no sufficiently close connection between the alleged false advertising and the harm suffered); *Global Tech LED, LLC v. Hilumz Int'l Corp.*, 2016 U.S. Dist. LEXIS 70584 (M.D. Fla. 2016) (holding that dismissal of complaint was proper where the plaintiff failed to "specifically allege … *both* that the false or misleading statement actually deceives or is likely to deceive a substantial segment of the intended audience *and* that the statement results in actual or probable injury").

In the Complaint, Westgate has failed to allege with any specificity ***why*** Timeshare Exit Team's "guarantee" is false and misleading; how that statement deceived Timeshare Exit Team's customers; or how the statement caused Westgate to suffer damage. More importantly, it clear from the face of the Complaint that Westgate cannot allege any set of facts showing it would be damaged by Timeshare Exit Team's "guarantee" to its customers of performance -- whether the guarantee is a prediction of future performance or a contractual obligation requiring refund.

**4.      Westgate has not sufficiently alleged proximate cause.**

In addition to not satisfying the above threshold requirements, Westgate have not satisfied the initial *Lexmark* requirement of proximate cause. Based on Westgate's theory of wrongdoing, Westgate has not, and cannot, show economic or reputational injury flowing directly from the purported "deception" in Timeshare Exit Team's advertising. The "harm" Westgate claim -- i.e., decisions made in connection with existing timeshare contracts, and the outcomes of same -- do not have a "sufficiently close connection" to the alleged advertising. Allowing a non-competitor to bring a claim against a party attempting to assist consumers who want to exit their timeshares under a theory that Timeshare Exit Team's advertising is "false" would expand the Lanham Act well beyond its plain meaning and intent and, in essence, completely bar Timeshare Exit Team and similar companies from operating their businesses.

However, even if this Court finds that Westgate's allegations do fall within the context of "commercial advertising and promotion," and that Westgate has satisfied the initial *Lexmark* showing, its claim still fails on the basis that Westgate have failed to sufficiently plead a valid cause of action for false advertising. In particular, Westgate has not sufficiently identified any actionable statement of fact, and further have not sufficiently described how such statement had a material effect on Timeshare Exit Team's customer's decisions to remain in their contracts or seek an exit.

Based on the foregoing, Westgate's claim is materially deficient. As stated above, Timeshare Exit Team's business overlaps with the Plaintiffs, but the two "are adversaries, not competitors." Coupled with Westgate's failure to demonstrate proximate cause for its alleged damages, leave to amend would be futile. Therefore, Westgate's Lanham Act claim should be dismissed with prejudice.

**E.      The Complaint fails to state a claim for misleading advertising under § 817.41, Fla. Stat. (Count 5).**

In order for a party to state a cause of action under § 817.41, Fla. Stat., the party must allege sufficient facts establishing that the party relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement, that is: (a) the representor made a misrepresentation of material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation." *Third Party Verification, Inc. v. Signaturelink*, 492 F.Supp.2d 1314, 1322 (M.D. Fla. 2007) (citing *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992)). "The pleader must also allege that the representor's representation was made with the intent or purpose, either directly or indirectly, of selling or

disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services." *Third Party Verification, Inc.*, *supra*, 492 F.Supp.2d at 1322 (citing *Samuels v. King Motor Company of Fort Lauderdale*, 782 So. 2d 489, 496 (Fla. 4th DCA 2001)).

Claims for false or misleading advertising under § 817.41, Fla. Stat., must comport with Rule 9(b). *See USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *2 (S.D. Fla. 2016); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *4 (S.D. Fla. 2011); *Simpson v. FWM Labs., Inc.*, 2010 WL 1257714, at *4 (S.D. Fla. 2010).

In *Castle Law*, this Court ruled on a motion to dismiss a similar claim under § 817.41, Fla. Stat., and found that although Orange Lake and Castle Law Group's respective businesses overlapped, Orange Lake was neither a consumer nor a competitor with respect to the defendants. In granting dismissal of the claim, this Court explained:

> The Plaintiffs attempt to bring themselves within the ambit of Fla. Stat. § 817.41 by alleging that they are competitors of Castle Law and Resort Relief, in that those two Defendants advertise to Plaintiffs' existing client base in order to persuade them to do business with Castle Law and Resort Relief instead of with Plaintiffs, and to divert monies due and owing to Plaintiffs instead to Castle Law and Resort Relief." …. [¶] This argument fails. The Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences necessarily overlap, the Plaintiffs and Defendants are selling entirely different services. They are adversaries, not competitors. [¶] As the Plaintiffs are neither consumers nor competitors with respect to the Defendants, [the claims] will be dismissed with prejudice.

*Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 2018 WL 1535719, at *8 (M.D. 2018). Here, similarly, while Westgate and Timeshare Exit Team's businesses necessarily overlap, they are adversaries, not competitors. Westgate has no standing to bring a claim under § 817.41, Fla. Stat., which is intended to protect consumers. *See e.g.*, *Kraft Gen. Foods v. Rosenblum*, 635 So.2d 106, 107 (Fla. 4th DCA 1994). Westgate did not purchase Timeshare Exit

Team's services and is not a consumer. Accordingly, Westgate's claim for misleading advertising under § 817.41, Fla. Stat., fails because it is not a proper plaintiff under § 817.41.

**F.      The Complaint fails to state a claim for civil conspiracy (Counts 3 and 4).**

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Craig v. Kropp*, 2017 U.S. Dist. LEXIS 88871, at *8 (M.D. Fla. 2017) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008)). The allegations of the Complaint do not sufficiently plead these elements, and as set forth above, there is no valid underlying claims for tortious interference (Count 1), which is fatal to Westgate's civil conspiracy claims. *See EMI Sun Village, Inc. v. Catledge*, 2013 U.S. Dist. LEXIS 140321 at *4 (S.D. Fla. 2013) ("There is no actionable conspiracy claim absent an underlying wrong.").

Moreover, as a threshold matter, to the extent that Westgate's claims for civil conspiracy are based on Timeshare Exit Team's alleged conduct in instructing law firms to send letters of legal representation and demand letters to Westgate on behalf of timeshare owners (Complaint, ¶¶ 8, 9, 86, 97, 101, 128(d), 137(c), 147(c)), such claims are barred as a matter of law by Florida's litigation immunity privilege. The privilege provides legal immunity "to statements or actions taken during a judicial proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, PA v. U.S. Fire Ins. Co.*, 639 So.2d 606, 607 (Fla. 1994); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 383 (Fla. 2007) (privilege applies in all causes of action, whether common-law torts or statutory violations).

Absolute immunity applies not only to the parties in a proceeding but also to counsel. *See Palaxar Grp., LLC v. Williams*, 2014 WL 5059286, at *9 (M.D. Fla. 2014) (applying Florida law) (citation omitted). The privilege extends to pre-suit demand letters. *See Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941, at * 3 (S.D. Fla. 2011). In *Robb*, the court dismissed a plaintiff's civil conspiracy claim because the act of sending demand letters failed to constitute the requisite "unlawful act or a lawful act by unlawful means." *Id.*, at *3. The court noted that even if the defendant's conduct in sending the demand letters was improper, Florida law recognizes a privilege to engage in reckless or outrageous behavior if the defendant "did no more than assert legal rights in a legally permissible way." *Id*., at *3, n.3.

The privilege to send demand letters is supported by public policy. "[T]he policy reasons for adopting a rule of immunity for actions taken in judicial proceedings" are based on "the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications…." *Echevarria,* at 384. The presumption is that the consequences of a party's actions will be addressed and remedied in the particular case. *See Robb, supra,* 2011 WL 2149941, at *3. As a matter of public policy, to allow anything more could lead to the disastrous re-litigation of issues into perpetuity. Thus, Counts 3 and 4 for civil conspiracy are barred as a matter of law, or otherwise defective. These claims should also be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants Reed Hein & Associates, LLC, Brandon Reed, Trevor Hein and Thomas Parenteau respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted this 17th day of August 2018.

/s/ John Y. Benford
John Y. Benford, Esquire
Florida Bar No. 51950
E-mail: john.benford@wilsonelser.com
E-mail: alyssa.heitman@wilsonelser.com
Amy L. Baker, Esquire
Florida Bar No. 86912
E-mail: amy.baker@wilsonelser.com
E-mail: alyssa.heitman@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER
111 North Orange Avenue, Suite 1200
Orlando, Florida 32801
Telephone: (407) 203-7599
Facsimile: (407) 648-1376
Attorneys for Defendants
Reed Hein & Associates, LLC, Brandon Reed,
Trevor Hein and Thomas Parenteau

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17th, 2018, the foregoing document was filed with the Clerk of Court using the CM/ECF system and that all counsel of record received an electronic copy.

/s/ John Y. Benford
John Y. Benford, Esquire