**WESTGATE RESORTS, LTD., et al.,**

      **Plaintiffs,**

**v.**                                                      **Case No:  6:18-cv-1088-Orl-31DCI**

**REED HEIN & ASSOCIATES, LLC,
SCHROETER GOLDMARK & BENDER,
P.S., JAMES D. HAILEY, THOMAS
JAMES BREEN, KEN B. PRIVETT PLC,
KEN B. PRIVETT, BRANDON REED,
TREVOR HEIN and THOMAS
PARENTEAU,**

      **Defendants.**

---

## ORDER

This matter comes before the Court without a hearing on the: (1) Motion to Dismiss (Doc. 29) filed Defendants Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("**TET**"), Brandon Reed ("**Reed**"), Trevor Hein ("**Hein**") and Thomas Parenteau ("**Parenteau**") (collectively, "**TET Defendants**"); (2) Motion to Dismiss (Doc. 31) filed by Defendants Ken B. Privett PLC ("**Privett Law**") and Ken B. Privett ("**Privett**") (collectively, "**Privett Defendants**"); and (3) Motion to Dismiss (Doc. 35) filed by Defendant Schroeter Goldmark & Bender, P.S. ("**SGB Law**"), James D. Hailey ("**Hailey**"), and Thomas Breen ("**Breen**") (collectively, "**SGB Defendants**"). Also before the Court are the responses in opposition (Docs. 34, 40, 41) filed by Westgate Resorts, LTD, *et al.* (collectively, "**Plaintiffs**" or "**Westgate**").

## I.      Background

According to the allegations of the Complaint (Doc. 1), which are accepted in pertinent part as true for purposes of resolving the instant motions, Plaintiffs are a group of entities engaged in the business of developing, managing, financing, and selling Westgate timeshare resort properties throughout the United States, including Florida. (Doc. 1, ¶ 2). Like many other timeshare companies, Plaintiffs have begun to take legal action against self-described consumer protection firms "whose business models profit from disrupting valid legal contracts with . . . their [timeshare] owners." (*Id.* ¶ 1).

In the instant case, Plaintiffs allege that Defendants are engaged in a timeshare cancellation scheme designed to induce timeshare owners, including identifiable Westgate timeshare owners ("**Westgate Owners**"), to retain TET and to breach their purchase and finance timeshare agreements ("**Timeshare Agreements**") for Defendants' pecuniary gain. (*Id.* ¶ 76). To facilitate the scheme, owners and officers of TET—specifically, Reed, Hein, and Parenteau—lure timeshare owners into hiring TET by making false promises to relieve timeshare owners of their timeshare obligations. (*Id.* ¶¶ 3, 77–81). For example, through the TET website, "Reed, Hein and Parenteau advertise that TET will utilize its illusory 'proprietary process' to 'get rid of' owners' timeshare contracts 'Safely. Legitimately. Forever.'" (*Id.* ¶ 82). On the website's "Frequently Asked Questions" section, Reed, Hein, and Parenteau also advertise that TET is for timeshare owners who are:

- Not using their timeshare as much as they intended to
- Frustrated by unexpected "special assessments" and skyrocketing maintenance fees
- Financially set back by their timeshare maintenance fees and special assessments
- Frustrated by their failure to sell the timeshare through a listing company
- Concerned about their children inheriting their timeshare and then consequently becoming financially responsible for it

- Bothered they can't vacation where they want, when they want
- Tired of going to the same place every year
- Aggravated with exchange companies
- Realizing that there are more ways to go on vacation for much less
- Widowed or divorced, or are no longer able to travel with their loved ones
- Inheritors of a timeshare they don't want or use
- Part of resort scams

(*Id.*). According to Plaintiffs, through these FAQs, Reed, Hein and Parenteau misrepresent to Westgate Owners that the foregoing advertised reasons are legally sufficient grounds to terminate a timeshare contract when, in fact, none of these are legal bases to cease making payments under their timeshare contracts. (*Id.* ¶ 83).

Reed, Hein and Parenteau also convince timeshare owners, including Westgate Owners, to retain TET by providing the owners with charts that purport to compare the cost of paying the owners' timeshare company to the cost of paying TET for its services. (*Id.* ¶ 94). However, the charts willfully exaggerate what the owners will pay to the timeshare company and make TET's hefty upfront fees appear lower than they really are. (*Id.*). By this and other deceptive advertising and marketing tactics, Reed, Hein and Parenteau dupe Westgate Owners into retaining TET for thousands of dollars. (Id. ¶ 89).

Before TET is retained, Reed, Hein, and Parenteau also direct TET's representatives to instruct owners, including Westgate Owners, to stop making obligatory payments under their Timeshare Agreements. (*Id.* ¶¶ 6, 84; Doc. 40, p. 2). By doing so, Reed, Hein, and Parenteau create the misconception that timeshare companies will be more willing to let Westgate Owners exit their Timeshare Agreements. (Doc. 1, ¶ 84). After signing TET's retainer documents, Westgate Owners are sent vague email updates designed to deceive them into believing that TET will negotiate with their respective timeshare companies and perform actual work on their behalf. (Doc. 1, ¶ 95). By

design, however, TET never provides Westgate Owners with legitimate representation or engages in negotiation. (*Id.* ¶¶ 96–97).

Instead, Reed, Hein and Parenteau hire law firms, including Privett Law and SGB Law, to send boilerplate demand letters to the timeshare companies in exchange for $1,200.00 per case and a minimum of 800 cases per month. (*Id.* ¶ 97). Privett Law's attorney—Privett—and SGB Law's attorneys—Hailey and Breen—then prepare, approve, sign, and send cookie-cutter demand letters to Plaintiffs without ever speaking to a Westgate Owner. (*Id.* ¶¶ 101, 104). In the letters, SGB Defendants and Privett Defendants advise Plaintiffs that their supposed clients wish to terminate their Timeshare Agreements and demand that Plaintiffs cease all non-billing related communications with their clients without providing any legal basis for termination. (*Id.*). Because Westgate Owners are purportedly represented by counsel and Plaintiffs are forbidden from communicating with them, Westgate Owners are completely unaware—often until they suffer adverse consequences—that Defendants have accomplished nothing for them. (*Id.* ¶ 98).

To date, Defendants' conduct has caused identifiable Westgate Owners to default on their payment obligations under their Timeshare Agreements and has caused Plaintiffs to lose payments due to them by Westgate Owners. (*Id.* ¶ 106). Seeking injunctive and monetary relief, Plaintiffs filed a complaint against Defendants asserting claims for tortious interference with existing contracts (Count I); violation of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Count II); civil conspiracy (Counts III and IV); misleading advertising in violation of Fla. Stat. § 817.41 (Count V); and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count VI). (*Id.* ¶¶ 110–183).

Defendants now move for dismissal of the claims asserted against them. (Docs. 29, 31, 35).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Where a complaint contains claims of fraud or mistake, however, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997). This particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1223 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)).

If a complaint does not comport with the pleading requirements or fails to set forth a plausible claim, it may be dismissed under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and

any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S. Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). As explained in *Iqbal*, a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    Analysis

### A.    Tortious Interference with Existing Contracts

In Count I, Plaintiffs assert that TET, Reed, Hein and Parenteau ("**TET Defendants**") tortiously interfered with existing contracts between themselves and Westgate Owners. Under Florida law, the tort of contractual interference occurs when: (1) a contract exists; (2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a party's rights under the contract; (4) there is no justification or privilege for the interference; and (5) there are damages. *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005).

In moving to dismiss Count I, TET Defendants advance several arguments. They first argue that Plaintiffs' claim should be dismissed because they fail to "identify specific contracts . . . with which [TET Defendants] allegedly interfered." (Doc. 29, pp. 8). However, this degree of specificity

is not required. At the motion to dismiss stage, Plaintiffs need only plead facts that, if true, demonstrate that TET Defendants tortiously interfered with existing contracts between Plaintiffs and identifiable Westgate Owners. *Twombly,* 550 U.S. at 544. They have done this. Plaintiffs allege that they had valid and enforceable Timeshare Agreements with identifiable Westgate Owners. (*See, e.g.*, Doc. 1, ¶¶ 71–73, 112). Despite TET Defendants' knowledge of those existing agreements, TET Defendants intentionally and unjustifiably induced identifiable Westgate Owners to, *inter alia*, stop making payments to Plaintiffs under their Timeshare Agreements. (*Id.* ¶¶ 76, 84, 106, 113–118, 120). As a result, Plaintiffs suffered damages. (*Id.* ¶¶ 106, 119). When taken together, these allegations are sufficient to support a claim for tortious interference.

Next, TET Defendants argue that, as agents of Westgate Owners, they cannot be liable for tortious interference. (Doc. 29, pp. 8–9). In that same vein, TET Defendants argue that they are not strangers to Plaintiffs' contractual relationships because they "had a clear financial interest in how the [Timeshare Agreements] were performed." (*Id.* at 9–10). The Court disagrees.

Although an agent generally cannot be held liable for tortiously interfering with the contract of its principal, an agent's "privilege to interfere" with the contracts of its principal is not absolute. *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987). "'[T]he privilege afforded [to] an agent who gives honest advice that it is in his principal's best interest to breach an existing relationship' is not available where the agent acts solely with ulterior purposes and the advice is not in the principal's best interest. *Id.* (quoting *Scussel v. Balter*, 386 So. 2d 1227, 1228–29 (Fla. 3d DCA 1980)). Likewise, non-strangers, who generally have the privilege to interfere with a business relationship to protect their own economic interests, may still be liable for tortious interference if they act in bad faith. *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, No. 09–CIV–22274, 2011 WL 1559823, at *5 (S.D. Fla. April 22, 2011).

In this case, Plaintiffs allege that TET Defendants urged Westgate Owners to breach their Timeshare Agreements, not to aid them in successfully ending their contracts with the Plaintiffs, but "for purely selfish and mercenary reasons so as to collect and retain a large pre-paid retainer." (Doc. 1, ¶ 118). If Plaintiffs can prove this, then TET Defendants' agency status would not shield them from liability.

Relying on *Ingenuity, Inc. v. Linshell Innovations, Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016), in which the Eleventh Circuit held that "a party's "predisposition to breach . . . precludes any finding that it was induced to breach by a third party," TET Defendants argue that Plaintiffs' claim fails because they are "not causing [Westgate] [O]wners to breach their contracts with [Plaintiffs] … but rather assisting individuals in obtaining a termination of their unwanted contracts." (Doc. 29, pp. 10–12).

This argument is undermined by Plaintiffs' assertion that Westgate Owners were not predisposed to breach their Timeshare Agreements, but that TET Defendants duped unsuspecting Westgate Owners into breaching their Timeshare Agreements for their own pecuniary gain. (*See, e.g.*, Doc. 1, ¶¶ 85–88). Furthermore, whether Westgate Owners were predisposed to breach their Timeshare Agreements is a fact-intensive inquiry inappropriate for resolution at this stage.

For the foregoing reasons, Count I will not be dismissed.

### B.    Violation of Florida's Deceptive and Unfair Trade Practices Act Fla. Stat. § 501.201, *et. seq*.

In Count II, Plaintiffs assert an FDUTPA claim against TET Defendants. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).[1]  To state a claim under

---

[1] For purposes of FDUTPA, the term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or

the FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

TET Defendants argue that this claim should be dismissed because: (1) Plaintiffs are not consumers and therefore lack standing to bring a claim under FDUTPA; (2) Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard; and (3) the alleged statements by TET Defendants constitute mere puffery and other nonactionable opinions. (Doc. 29, pp. 12–21).

 "FDUTPA claims are not limited to consumers." *Orange Lake Country Club, Inc. v. Castle Law Grp., P.C.*, No. 6:17-cv-1044-ORL-31DCI, 2018 WL 1535719, at \*5 (M.D. Fla. Mar. 29, 2018). Rather, the statute applies to all individuals and entities that can prove the elements of an FDUTPA claim. *See Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (holding that the statutory amendment "evinces a legislative directive that the remedy of damages is not limited to a consumer"); *see also* Fla. Stat. § 501.211(2) (stating that "[i]n any action brought by a *person . . .* , such *person* may recover") (emphasis added). Therefore, TET Defendants' first argument fails.

The second and third arguments are equally unavailing. As discussed *infra*,[2] the Court cannot conclude, as a matter of law, that the statements at issue constitute mere opinion or puffery. Furthermore, Plaintiffs' FDUTPA claim does not rest on fraud allegations, so Rule 9(b) is inapplicable. But even if Rule 9(b) applied, Plaintiffs' allegations suffice. Plaintiffs identify and detail TET Defendants' advertising statements, when and where they were made, why their statements were false or misleading, how the statements deceived Westgate Owners into retaining TET and stopping their required Timeshare Agreement payments, how Plaintiffs were damaged,

---

service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

[2] *See* section III(E) of this Order.

and what TET Defendants obtained as a consequence of their purported fraud. (*See, e.g.*, Doc. 1, ¶¶ 76–99, 106, 124–135).

For these reasons, the Court will deny the motion to dismiss Count II.

### C.    Civil Conspiracy

Plaintiffs assert two separate claims for civil conspiracy—one against TET Defendants and the SGB Defendants (Count III)—and another against TET Defendants and the Privett Defendants (Count IV) (collectively, "**Conspiracy Defendants**").

A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). An actionable conspiracy also requires an actionable underlying tort or wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

The Conspiracy Defendants do not dispute that Plaintiffs have alleged all the essential elements of a claim for civil conspiracy. Instead, they first argue that Plaintiffs' claims for conspiracy fail because they do not adequately allege their underlying claim for tortious interference. As support, the Conspiracy Defendants make arguments nearly identical to those advanced by TET Defendants while moving to dismiss Count I.[3] (Doc. 29, pp. 30; Doc. 31, pp. 9–

---

[3] In addition to echoing the arguments advanced by the TET Defendants, the SGB Law Defendants and the Privett Law Defendants contend that Plaintiffs claim for tortious interference fails because they fail to meet the Rule 9(b)'s strict pleading requirements. (*See* Doc. 31, pp. 9–10; *see also* Doc. 35, pp. 12–13). However, Rule 9(b) is inapplicable because Plaintiffs' claim for tortious interference does not sound in fraud. Even if it did apply, Plaintiffs allegations suffice to comply with the heightened pleading standards.

11; Doc. 35, pp. 10–13). For the reasons stated in section III(A) of this order, the Conspiracy Defendants' arguments lack merit.

To the extent that Plaintiffs' claims for civil conspiracy are based on the demand letters, the Conspiracy Defendants argue that their claims are barred by Florida's litigation immunity privilege, which extends to pre-suit communications. (Doc. 29, p. 30; Doc. 31, pp. 7–9; Doc. 35, pp. 13–14).

Florida's litigation privilege is an affirmative defense. *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 2d DCA 2002). Affirmative defenses are not usually considered at the pleading stage unless "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) (quoting *Evans v. Parker*, 440 So. 2d 640, 641 (Fla. 1st DCA 1983)). Here, the conclusive applicability of the litigation privilege does not unequivocally appear on the face of the SAC. Therefore, the Court is unable to reasonably conclude that Plaintiffs' conspiracy claims are barred by Florida's litigation privilege.

The SGB Defendants and the Privett Defendants separately argue that Plaintiffs' claim is barred by the intra-corporate conspiracy doctrine because TET hired them as its attorneys and agents, and an agent cannot conspire with its principal or employer. (Doc. 31, pp. 4–7; Doc. 35, pp. 7–9). The Court is unpersuaded.

Although "neither an agent nor an employee can conspire with his or her corporate principal or employer, . . . [a]n exception is made where the agent has a personal stake in the activities separate from the principal's interest." *Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002) (citation omitted). In the instant case, Plaintiffs allege that the SGB Defendants and the Privett Defendants had personal interests in furthering the conspiracy in that they acted for their own "substantial pecuniary gain". (Doc. 1, ¶¶ 102, 105, 138). If Plaintiffs' allegations are

assumed to be true, their claim for conspiracy is not barred by the intra-corporate conspiracy doctrine.

In moving to dismiss Plaintiffs' conspiracy claim, the SBG Defendants make three additional arguments. First, the SGB Defendants argue that in the absence of "privity" between themselves and Plaintiffs, "Plaintiffs lack the requisite standing to speak for [Westgate Owners] or to sue [SGB Defendants] for the legal services provided . . . to those [owners]." (Doc. 25, pp. 19–20). As support, SGB Defendants rely on *Angel, Cohen & Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192, 194 (Fla. 1987), which affirms that privity is required to sue a lawyer for professional malpractice. This argument is without merit. Article III standing requires that a plaintiff sufficiently allege that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, Plaintiffs allege that they suffered an injury to their commercial and reputational interest. (Doc. 1, ¶ 141). Plaintiffs maintain that they suffered injury because, *inter alia*, SGB Defendants sent Plaintiffs boilerplate demand letters "rife with false or non-existent legal grounds for termination" and demanded that Plaintiffs cease communications with Westgate Owners, while TET Defendants simultaneously instructed those owners to breach their valid Timeshare Agreements. (*Id.* ¶¶ 97–102, 106–107, 134–140). Finally, Plaintiffs' alleged injuries are likely to be redressed by the relief they seek—monetary damages and an injunction. (*Id.* ¶¶ 142–143).

These allegations are sufficient to establish Article III standing. Besides, even a cursory review of the Complaint reveals that Plaintiffs' claims for conspiracy do not sound in professional negligence. Plaintiffs do not seek to speak on behalf of Westgate Owners; nor do they seek to sue any of the Defendants for the legal services provided to said owners. Plaintiffs simply seek redress for

the damages they suffered due to Defendants' purported scheme. Therefore, the Court rejects this argument.

The SGB Defendants also argue that Plaintiffs have failed to state a cause of action against Hailey and Breen because they are officers of SGB Law and "the corporate form generally protects officers and shareholders from personal liability" and Plaintiffs cannot pierce the corporate veil. (Doc. 35, pp. 14–18). However, SGB Defendants misconstrue the nature of the Plaintiffs' claim. Plaintiffs do not seek to hold Hailey and Breen liable under a veil-piercing theory. Rather, Plaintiffs allege that Hailey and Breen personally participated in Defendants' timeshare cancellation scheme. (*See* Doc. 1, ¶¶ 97–101, 136–137).

> Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort.

*Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1104–05 (S.D. Fla. 2000). Therefore, despite SGB Defendants' contention to the contrary, Plaintiffs need not pierce the corporate veil. *See id.* (rejecting defendants' argument that plaintiffs needed to plead a veil-piercing theory to hold individual defendants liable for their personally tortious conduct).

Accordingly, the motions to dismiss Counts III and IV will be denied.

### D.     Misleading Advertising, Fla. Stat. § 817.41

Count V asserts a claim against TET Defendants for misleading advertising in violation of Fla. Stat. § 817.41. A consumer party may state a claim under Section 817.41 by pleading:

> (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce

another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). When the party alleging misleading advertising is a plaintiff-consumer, direct reliance is required to assert a state a claim under § 817.41. But "when the party alleging misleading advertising is a competitor of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to 'stand-in' for the element of direct reliance." *Id*.

Plaintiffs are not consumers who suffered an injury in justifiable reliance on a representation Defendants made to the public. Therefore, Plaintiffs attempt to bring themselves within the ambit of Fla. Sta.§ 817.41 by alleging that "TET Defendants are in direct competition with Plaintiffs for the payments Westgate Owners owe to Plaintiffs." (Doc. 1, ¶ 157).

This argument fails. Plaintiffs do not compete with TET Defendants in selling goods or services. Rather, Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences overlap, Plaintiffs and TET Defendants are engaged in entirely different markets. They are adversaries, not competitors. Accordingly, Count V will be dismissed with prejudice.

### E.  False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)

Finally, Plaintiffs allege that TET Defendants are liable for false advertising under the Lanham Act. To state a claim under the Lanham Act, a plaintiff must allege that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

Actionable false statements include: "(1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999) (citation omitted). To determine if an advertisement is false or misleading, a court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citation omitted). "[B]ald assertions of superiority or general statements of opinion" do not result in a violation of the Lanham Act. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000). Similarly, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely"—commonly referred to as "puffery"—is not actionable under the Lanham Act. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

TET Defendants first argue that Plaintiffs' claims fail because their statements—specifically, the "100% guarantee"—were mere puffery or non-actionable opinions. (Doc. 29, pp. 22–25). Based on the allegations of the Complaint, Defendants' statements were not general opinions or exaggerated statements; but rather, assertions of fact upon which a reasonable consumer might rely. Therefore, the Court cannot conclude as a matter of law that the statements at issue constitute mere puffery or non-actionable opinions.

Next, TET Defendants contend that Plaintiffs' claim should be dismissed because they fail to allege that the statements at issue occurred within the context of "commercial advertising or promotion." Defendants identify four characteristics of "commercial advertising or promotion":

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[; and] (4) the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (emphasis added) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Ins. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)), *cert. denied*, *Tobinick v. Novella*, 138 S. Ct. 449 (2017).

TET Defendants posit that since they are not in commercial competition with Plaintiffs, their Lanham Act claim fails. However, the U.S. Supreme Court has held that a plaintiff need not show that a defendant was in commercial competition with the plaintiff to have standing under the Lanham Act. *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 (2014). According to the U.S. Supreme Court, where, as here, "a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendant's aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage." *Id.* Thus, the Court will not dismiss Plaintiffs' Lanham Act claim on this basis. *See Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-ORL-37-DCI, 2018 WL 735627, at *3 (M.D. Fla. Jan. 26, 2018) (declining to dismiss a Lanham Act claim based on similar arguments); see also *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1280 (S.D. Fla. 2015) (explaining that whether a plaintiff and defendant are competitors "is not dispositive of whether the speech at issue constitute[s] 'commercial advertising or promotion'"), *aff'd sub nom.*, 848 F.3d 935 (11th Cir. 2017).

Finally, TET Defendants maintain that Plaintiffs have omitted the necessary allegations of injury and causation for their Lanham Act claim. (Doc. 29, pp. 26–28). Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected"

by the Lanham Act. *Lexmark*, 134 S. Ct. 1377. To that end, a false advertising claim under the Lanham Act requires that "a plaintiff . . . plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id*. at 1395. The sufficiency of proximate cause allegations turns on whether "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 1390. When "a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id*. at 1393.

Plaintiffs adequately alleged that their injuries were proximately caused by Defendants' alleged false and misleading statements. They allege that TET Defendants made advertising statements which, *inter alia*, falsely deceived Westgate Owners into believing that Plaintiffs engage in unlawful conduct and falsely guaranteed to relieve Westgate Owners of their Timeshare Agreement obligations. (Doc. 1, ¶¶ 76–85, 94, 166–180). The advertising statements caused identifiable Westgate Owners to retain TET and to stop making payments as required under their Timeshare Agreements. (*Id*. ¶¶ 106, 173–174). As a result, Plaintiffs suffered harm to their reputational and commercial interest. (*Id*. ¶¶ 106, 178, 181, 183). When viewed in the light most favorable to Plaintiffs, these allegations sufficiently allege injuries flowing directly from TET Defendants' statements.

For the foregoing reasons, the Court will deny the motion to dismiss Count VI.

## IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motions to Dismiss (Doc. 31) filed Defendants Ken B. Privett PLC and Ken B. Privett, and the Motion to Dismiss (Doc. 35) filed by Defendant Schroeter Goldmark & Bender, P.S., James D. Hailey, and Thomas Breen are **DENIED**. The Motion to Dismiss (Doc. 29)

filed by Defendants Reed Hein & Associates, LLC d/b/a Timeshare Exit Team, Brandon Reed, Trevor Hein, and Thomas Parenteau is **GRANTED IN PART AND DENIED IN PART.** Count V is **DISMISSED WITH PREJUDICE**. In all other respects, the motion is denied.

Should the Plaintiffs wish to file and amended complaint, they must do so on or before November 16, 2018.

**DONE** and **ORDERED** in Orlando, Florida on October 24, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE