**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**WESTGATE RESORTS, LTD., et al,**

    **Plaintiffs,**

**v.**                                                                                                  Case No:   6:18-cv-1088-Orl-31DCI

**REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, BRANDON
REED, TREVOR HEIN and THOMAS
PARENTEAU,**

    **Defendants.**

## ORDER

This case comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 112) filed by the Defendants and the Motion for Partial Summary Judgment (Doc. 111) filed by the Plaintiffs.  In resolving these motions, the Court has considered the responses in opposition (Doc. 122, 123) and replies (Doc. 128, 129) filed by the parties.

### I.   Background

The Plaintiffs are a group of roughly 30 related entities consisting of either timeshare developers or timeshare owners' associations.  For simplicity's sake, they will be referred to, collectively, as "Westgate".  Defendant Reed Hein & Associates, LLC (henceforth, "TET"), which does business as "Timeshare Exit Team," is in the business of helping timeshare owners get out of their obligations to timeshare businesses such as the Plaintiffs.  (Those obligations primarily consist of requirements to pay maintenance fees and property taxes to the owners' associations and, for those owners with outstanding mortgages, mortgage payments to the developers.)  Defendants Brandon Reed, Trevor Hein, and Thomas Parenteau ran TET during the relevant time frame.

TET advertises extensively via talk radio and various websites to recruit new clients. Westgate complains that many of the statements TET makes via these ads and other marketing materials are false and cause harm to Westgate.  Westgate also complains that TET induces timeshare owners to stop making payments to Westgate or otherwise breach their contracts.

In July 2018, Westgate filed the instant suit.  (Doc. 1).  In November 2018, Westgate filed an Amended Complaint (Doc. 69), asserting one claim for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); one claim for tortious interference with existing contracts under Florida law; two claims for civil conspiracy to commit tortious interference[1]; and one claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 – 501.213.  The Defendants now seek summary judgment as to each of Westgate's claims.[2]  In addition, Westgate seeks summary judgment as to the remaining affirmative defenses raised in the Defendant's Answer (Doc. 71) to the Amended Complaint.

## II.     Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  In determining whether the moving party has satisfied its burden,

---

[1] Each of the conspiracy claims involved the current defendants and one of two groups of additional defendants who have been voluntarily dismissed.

[2] In the course of resolving damages-related discovery issues, Judge Irick entered an order (Doc. 105) bifurcating the issue of damages, for summary judgment purposes, from the other issues in this case.  As a result, the Defendants' motion is limited to issues of liability and causation, rather than the existence or amount of damages.

the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.   The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.   Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.*   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**III.   Analysis**

    **A.   Lanham Act False Advertising**

Section 43(a) of the Lanham Act provides, in pertinent part, that

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —

…

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).   To prevail on a false advertising claim under the Lanham Act, a plaintiff must establish that (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 702 F.3d 1279, 1295; (11th Cir. 2012) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)).

The Defendants raise several arguments in opposition to Westgate's Lanham Act claim, but the Court need address only one: causation.   In the Amended Complaint, Westgate contends that allegedly false statements in TET's ads and marketing materials have resulted in harm to Westgate in the form of "injury to their commercial interests" (Doc. 69 at 46). In particular, Westgate alleges that the statements "induce Westgate Owners to cancel their timeshare interest without any factual or legal basis and stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay."   (Doc. 69 at 45).   Westgate does not allege that the statements resulted in reputational harm.

In response to an interrogatory, Westgate identified 33 statements it believed to be false or misleading in TET's ads and marketing materials.   (Doc. 112-18 at 8-16).   The statements – which Westgate paraphrases rather than quotes – cover a range of issues.   Examples include statements to

the effect that timeshare owners can exit their contracts for any reason; that TET has a 100 percent success rate; and that TET provides a money back guarantee. (Doc. 112-18 at 9-10). However, as the Defendants point out (Doc. 112 at 8), none of the 33 statements identified by Westgate direct (or can reasonably be construed to direct) timeshare owners to stop making payments. A plaintiff suing under § 1125(a) ordinarily must show "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (emphasis added). Westgate cannot show that any of the 33 statements directly caused timeshare owners to stop making payments. Accordingly, the allegedly false statements cannot have been the source of Westgate's claimed injury. The Defendants are entitled to summary judgment on Westgate's Lanham Act claim.

### B.     Tortious Interference

Under Florida law, the elements of a claim for tortious interference with an existing business relationship are (1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage of the plaintiff as a result of the breach of the relationship. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).

The Defendants argue that they did not interfere in the relationship between their timeshare owner clients and Westgate, because the clients were predisposed to breach their timeshare contracts before hiring TET. (Doc. 112 at 29). If true, this would defeat Westgate's claim. *See, e.g.*, *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Florida, Inc.*, 832 So.2d 810, 814 (Fla. 2d DCA 2002) (Where defendant already intended to breach contract with plaintiff before contacting

- 5 -

co-defendant, co-defendant entitled to summary judgment on tortious interference claim). But the only "evidence" cited by the Defendants to support this contention is to assert that timeshare owners sign up with TET "because they are already dissatisfied with [Westgate] and have already made the decision to exit/renegotiate their timeshare contracts."[3] (Doc. 112 at 32). But wanting to "exit" or "renegotiate" a contract is not at all the same thing as intending to breach it. The term "exit" at least implies a lawful termination of the contractual relationship. And if anything, renegotiating a contract is the opposite of breaching it; someone who attempts to renegotiate a contract is seeking to remain a party to it.

The Defendants also complain that Westgate's tortious interference claims fails due to a lack of evidence regarding this interference. More particularly, they argue that plaintiffs must provide direct evidence of interference, rather than circumstantial evidence. (Doc. 112 at 30). But the cases they cite do not at all support such a proposition. For example, the Defendants cite *Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.,* 779 So.2d 554, 558 (Fla. 5th DCA 2001). In that case, however, the court found that the "circumstantial evidence" relied on by one party was insufficient to hold the president of the other party personally liable for tortious interference committed by his company. *Id.* Contrary to the Defendants' implication, the *Rockledge Mall* court did not announce a rule that all tortious interference claims must be supported by direct evidence. The other arguments raised by the Defendants on this point do not merit discussion. Summary judgment will be denied as to the tortious interference claim.

---

[3] The Defendants also contend that "the nine owner witnesses set for deposition by Plaintiffs each testified that they made their decision to exit their timeshare before learning of Reed Hein." (Doc. 112 at 35).

### C. Civil Conspiracy

Under Florida law, the elements of a civil conspiracy claim are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). The Defendants argue that because the tortious interference claim fails, Westgate's civil conspiracy claims must also fail. (Doc. 112 at 36). However, as discussed *supra*, the Defendants are not entitled to summary judgment on the tortious interference claim, and therefore summary judgment will also be denied as to the civil conspiracy claims.

### D. FDUTPA

FDUPTA makes unlawful all "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'' Fla. Stat. § 501.204(1). FDUTPA is intended, *inter alia*, to "protect the consuming public and legitimate business enterprises from" such practices. § 501.202(2). To recover damages on an FDUTPA claim, a plaintiff must establish (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). Westgate contends that TET has violated FDUTPA by, among other things, utilizing false statements in its ads or marketing materials that have the effect of deceiving consumers into retaining TET. (Doc. 112 at 34-35).

The Defendants make the same causation argument in regard to the FDUTPA claim as they made in regard to the Lanham Act claim – *i.e.*, that none of the allegedly false or misleading ads or materials direct TET clients to stop making payments to Westgate. (Doc. 112 at 35-36). In response, Westgate simply cites to the same arguments it made regarding the Lanham Act claim.

(Doc. 122 at 34).  Those arguments are no more effective here than they were there.  Summary judgment will be granted as to this claim.

### E.     The Affirmative Defenses

Originally, the Defendants asserted eighteen affirmative defenses in their Answer (Doc. 71) to the Amended Complaint.  On February 11, 2019, Judge Irick entered an order striking their seventh, eighth, and fifteenth affirmative defenses.  Westgate now seeks summary judgment as to the remainder.

The Defendants' first affirmative defense is that Westgate failed to mitigate its damages. (Doc. 71 at 10).  Westgate contends that the Defendants have not produced any evidence of such a failure.  (Doc. 111 at 25).  In response, the Defendants do not point to any such evidence.  They do argue that Westgate could have reduced the damages it ultimately suffered by taking back title to all the properties at issue immediately, rather than going through the negotiating process with TET or the lawyers it hired.  However, they do not present any evidence in support of this argument, either.  Summary judgment will therefore be granted as to this defense.

The second and third affirmative defenses (Doc. 71 at 10) both pertain to the tortious interference claim.  In the second defense, the Defendants contend that, as agents, they were privileged to interfere with the contracts between their clients and the various Westgate entities.  In the third, the Defendants assert that any interference was privileged because they were acting in their own economic interests or the economic interest of their clients.  Westgate denies that the Defendants were agents of the TET owners, but disputed issues of material fact remain as to the Defendants' agency status.  Summary judgment will therefore be denied as to these defenses.

The Defendants' fourth affirmative defense is that Westgate lacks standing.  (Doc. 71 at 10).  The party invoking federal jurisdiction bears the burden of establishing standing.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In this case, it is the Plaintiffs that are invoking federal jurisdiction.  As such, it is difficult to imagine how lack of standing could constitute an affirmative defense – *i.e.,* an issue on which the Defendants would bear the burden.

Nonetheless, with that said, standing requires (1) that the plaintiff have suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  In response to the instant motion, the Defendants argue that Westgate lacks evidence of causation and damages in regard to at least some of its claimed injury.[4]  However, the Defendants present nothing supporting the notion that this issue should be treated as an affirmative defense.  To the extent issues of causation and damages remain to be decided, they will be resolved at trial as part of Westgate's case.  Summary judgment will be granted as to this affirmative defense.

The Defendants' fifth, eleventh and twelfth affirmative defenses (Doc. 71 at 10-11, 12) are addressed solely to the Lanham Act claim.  As that claim has been resolved, the motion will be denied as moot as to these defenses.

In their sixth affirmative defense, the Defendants contend that all of Westgate's claims are barred by the doctrine of unclean hands because Westgate "wrongfully induced" TET's customers into contractual relationships.  (Doc. 71 at 11).  For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements:  First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted.  Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by the plaintiff's conduct.  *Calloway v. Partners Nat. Health Plans*,

---

[4] The Defendants also argue that Westgate lacks standing to pursue its Lanham Act claim, but as that claim has already been resolved adversely to Westgate, the Court will not address the standing issue in regard to it.

986 F.2d 446, 450–51 (11th Cir. 1993) (citations omitted). The Defendants present no evidence on either score, and therefore the motion will be granted as to this defense.

As their ninth affirmative defense, the Defendants argue that Westgate's conspiracy claims are barred by the litigation privilege, which immunizes acts occurring during the course of a judicial proceeding. *See, e.g.*, *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). The Defendants point out that such immunity has been extended to presuit communications that are required by law (Doc. 123 at 21-22) but make no effort to show that any of the particular actions at issue as part of the conspiracy claims might fall within the litigation privilege. Summary judgment will be granted as to this defense.

Defendants' tenth affirmative defense (Doc. 71 at 12) is based on the *Noerr-Pennington* doctrine, which protects defendants who exercise their First Amendment right to petition the government for redress of grievances. The Defendants have made no showing that the actions at issue in this case – such as their own advertising, or their clients' cessation of payments to Westgate – were part of any such petition. Summary judgment will be granted as to this defense.

The thirteenth and fourteenth defenses are based on the Sherman Act and the Clayton Act. (Doc. 71 at 12-13). The Court sees no way in which either of these acts could conceivably apply in this case, much less as an affirmative defense to any of the claims at issue here. The Defendants' response to this motion does not provide any basis for asserting an affirmative defense (or even a counterclaim, for that matter) based on either of these acts, and therefore the motion will be granted as to these defenses.

Affirmative defenses sixteen and seventeen are based on the statute of limitations and laches, respectively. (Doc. 71 at 13). In response to this motion, the Defendants assert that some Westgate owners began hiring TET at points in time that could conceivably fall outside the

- 10 -

applicable limitations period. But they cite to no evidence on any other point required to prevail on either of these defenses, such as that the claims at issue in this case fall outside the limitations period or that Westgate unreasonably delayed in asserting the instant claims. The motion will be granted as to these defenses.

Finally, the Defendants assert, as their eighteenth affirmative defense, that Westgate failed to state a valid cause of action upon which relief can be granted. (Doc. 71 at 13). This is not an affirmative defense, and the motion will be granted as to it.

### IV.     Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 112) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Westgate's Lanham Act claim and FDUTPA claim and **DENIED** as to the remaining claims. And it is further

**ORDERED** that Westgate's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to affirmative defenses 1, 4, 6, 9, 10, 13, 14, 16, 17, and 18; the motion is **DENIED** as to defenses 2 and 3; and the motion is **DENIED AS MOOT** as to defenses 5, 11, and 12.

**DONE** and **ORDERED** in Orlando, Florida on February 11, 2020.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE